61 N.J. Super. 131 (1960)
160 A.2d 192
AL ARSEN, INDIVIDUALLY AND TRADING AS AL'S AUTO SALES, PLAINTIFF,
v.
DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY; N.Y. AUTO BODY & RADIATOR WORKS INC., A CORPORATION OF NEW JERSEY; AND ELSIE GROTON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 11, 1960.
*132 Mr. Martin Klughaupt for the plaintiff Al Arsen, individually and t/a Al's Auto Sales (Mr. Martin Klughaupt, attorney).
Mr. Peter L. Hughes, III, for the defendant Director of the Division of Motor Vehicles of the State of New Jersey (Mr. David D. Furman, Attorney General of New Jersey, attorney).
Mr. Richard B. Greenhalgh for the defendant New York Auto Body & Radiator Works, Inc. (Messrs. Rosenberg, Schmidt & Greenhalgh, attorneys).
Mr. Birger M. Sween for the defendant Elsie Groton (Mr. Harvey Smith, attorney).
*133 BROWN, J.D.C. (temporarily assigned).
The plaintiff, a highway used car dealer in Little Ferry, Bergen County, paid $2,200 to one Anthony Jacene for possession of and title to a current model Ford station wagon. It was a most unfortunate transaction. Jacene's certificate of ownership was issued on an owner assignment which Jacene had forged. The car was impounded by the Director of the Division of Motor Vehicles pending investigation of the owner's stolen car complaint. Custody of the automobile was delivered to New York Auto Body and Radiator Works, Inc. Jacene is a fugitive.
The plaintiff sued the Motor Vehicle Director and the bailee for wrongful detention. By consent of all parties, the owner, Elsie Groton, was made a defendant. She counterclaimed against the plaintiff for possession. Involvement of the Motor Vehicle Director and the bailee has been attended to by stipulation. Nothing remains for adjudication except the controversy between the purchaser and the owner as to which should suffer for Jacene's malefaction.
It is clear from the opinion in Eggerding v. Bicknell, 20 N.J. 106 (1955), that the rules for assignment of automobile ownership are sui generis. Effectual title transfer depends upon compliance with requirements of an artificial character. They were not satisfied here, of course. But according to the pre-trial order, the plaintiff does not depend upon a claim of ownership. Reliance rests upon an estoppel arising from conduct of the defendant, Groton. The contention is that, having clothed Jacene with the indicia of title, the defendant should not be permitted to shift her loss to a bona fide purchaser. Eggerding does not bear upon the issue thus framed for trial.
That issue, as developed by the proof, may be stated as follows:
Where the owner of an automobile has delivered to another possession of the car, its key and the certificate of ownership, is the owner estopped to claim the car from a *134 bona fide purchaser who relied upon the possessor's evidence of title derived from forgery of the certificate?
If the vendor of a chattel is not the owner or is not authorized by the owner, then no title passes by the sale. This is the consequence of R.S. 46:30-29 (Uniform Sale of Goods Law). The section contains a proviso however  the conduct of the owner can preclude him from denying the vendor's authority.
The Supreme Court construed this statutory provision in Nelson v. Wolf, 4 N.J. 76 (1950). The opinion states the following proposition of law:
"* * * although possession alone is not enough to create an estoppel, the owner may be estopped from setting up his own title and the lack of title in the vendor as against a bona fide purchaser for value where the owner has clothed the vendor with possession and other indicia of title." (at pages 79-80)
The Nelson case did not involve an automobile transfer. But the applicability of the principle to such a sale is implied from the court's analysis of automobile decisions in other jurisdictions which annotate the comparable section of the Uniform Sales Act.
The New Jersey statutory system for registration of automobile ownership (R.S. 39:10-1 et seq.) has as one purpose the issuance of a "certificate of ownership." The certificate is an indicium of title according to the statute (N.J.S.A. 39:10-2) and its sufficiency as such is expressly attested by the Director on the face of the document.
It is evident that counsel in this case have diligently researched the law but their briefs do not present a precedent from any jurisdiction. A helpful annotation of cases on the general subject appears in 18 A.L.R.2d 813. While none is precisely in point, the "summary" distills from a miscellany of fact situations this general view:
"Statutory provisions governing the registration of title to or interests in motor vehicles are of fundamental importance in determining the reliance which a purchaser may safely place upon the possession *135 of a title certificate or other document showing ownership in the holder. Where the statute sets up a regular system of title registration, similar to the Torrens system of registering realty titles, and stipulates an exclusive procedure for the transfer of title and the recordation of liens or encumbrances on the title certificate, it is generally held that an innocent purchaser for value, relying upon the possession of such a certificate showing no encumbrances, will be protected against the claims of a chattel mortgagee, conditional vendor, or other holder of a security interest.

* * * * * * * *
Owners of a free and complete interest in a motor vehicle, as well as the holders of security titles, may lose their interests to an innocent purchaser by negligently entrusting another with the possession of a motor vehicle and its certificate of title. So, innocent purchasers for value have been protected where they bought from one who had secured the motor vehicle and title certificate by giving a bad check, or from one to whom the owner had delivered the automobile and title certificate for various other reasons." (at p. 817)
It is undisputed that the defendant gave possession of the car with its key to Jacene for his personal use. When he offered to get "courtesy plates" for her car, she gave him the certificate of ownership because he said he needed it for the purpose. The plaintiff's counsel through cross-examination of the defendant amply demonstrated her gullibility in trusting Jacene. It was also established on the trial that the defendant deliberately misled the police as to the circumstances of her conduct and withheld from them her knowledge concerning Jacene's last place of residence.
The proximate cause of the purchase transaction into which the plaintiff was drawn was the gross carelessness of the defendant. She willingly supplied Jacene with everything necessary for the action he took. In the atmosphere of the sudden friendship which began in a tavern and centered in visits to such places almost every evening there was no reasonable basis for confidence in his integrity. The use he made of the opportunity she provided should have caused no surprise.
When Jacene appeared at the plaintiff's used car lot with the car, the key and a muniment of his own title he was *136 empowered with the prima facie attributes of ownership. This capacity for deception was made possible by the defendant's fault.
An estoppel should arise in favor of an innocent purchaser for value in accordance with the principle recognized in Nelson v. Wolf, supra. Did the plaintiff have such a status? He testified that he has been a used car dealer since 1948. When he observed that Jacene's certificate of ownership was issued on the very date of the sale this raised a question in his mind regarding the title; he "backed away from the deal"; he asked for an explanation; he was satisfied when told that because the car was received the day before by Jacene and a partner in payment of a debt it was necessary to put it in the name of Jacene alone in order to sell it; he did not ask to see the registration; he made no inquiry of the Division of Motor Vehicles.
In his testimony, the plaintiff candidly admitted that the even date of the ownership certificate excited an initial suspicion. With more than ten years of experience in a business fraught with the risk of car theft should the plaintiff have been more cautious? Was the peculiarity of the certificate date sufficient per se to put a used car dealer upon inquiry to ascertain the true facts? I believe that a reasonable man so circumstanced would have been so activated. The plaintiff's testimony supports the conclusion. He said that he resold the automobile the same day to a wholesaler in New York City. The latter questioned the title forthwith because of the certificate issuance date. He rescinded the sale and he suggested that the plaintiff check out the ownership. As a result of his inquiry, the plaintiff quickly ascertained that the car was stolen.
The maxim that where one of two innocent persons must suffer by the wrongdoing of a third, he who arms the wrongdoer with the power to commit the wrong must suffer its effects, has no application here. The defendant armed Jacene with the power to pose as an owner with a title document. But it was not such a muniment as to entrap a wary commercial *137 buyer. If the certificate itself sufficed to trigger the suspicion of the wholesaler then the same incongruity together with the attendant circumstances at the used car lot should have warned the plaintiff not to act so swiftly as he did.
The foregoing reasons require judgment for the defendant Elsie Groton on the main case and judgment for possession in favor of the same defendant and against the plaintiff Al Arsen on her counterclaim.
Mrs. Groton's overall conduct, and in particular her admitted obstruction of an investigation which could otherwise have resulted in the apprehension of Jacene, makes any damages for her loss of use inappropriate.
By stipulation the defendant Elsie Groton will pay the sum of $155 to the defendant New York Auto Body and Radiator Works, Inc., upon delivery of the automobile.