Robert H. BONNELL, Plaintiff, Appellant,

v.

John MAHAFFEY and Mrs. John Mahaffey, Defendants, Respondents.

No. 34515.

Missouri Court of Appeals, St. Louis District, Division One.

April 3, 1973.

Carstarphen, Harvey & Wasinger, Frank B. Harvey, Hannibal, for plaintiff, appellant.

Rendlen & Rendlen, Clifford H. Ahrens, Hannibal, for defendants, respondents.

1. All references to statutes are to RSMo. 1969, V.A.M.S.

DOWD, Chief Judge.

The question presented on appeal in this replevin suit involving a motor vehicle requires an interpretation of Section 301.-210.[1] The pertinent part of that section, which deals with the sale and transfer of motor vehicles, reads as follows:

"1. In the event of a sale or transfer of ownership of a motor vehicle * * * for which a certificate of ownership has been issued the holder of such certificate shall indorse on the same an assignment thereof, * * * and deliver the same to the buyer *at the time of the delivery* to him of said motor vehicle * * *.

\* \* \* \* \* \*

"4. It shall be unlawful for any person to buy or sell in this state any motor vehicle * * * registered under the laws of this state, unless *at the time of the delivery* thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and *the sale of any motor vehicle* or trailer registered under the laws of this state, *without the assignment of such certificate of ownership, shall be fraudulent and void.*" (Emphasis added).

The facts in this case are simple. In January, 1970, the defendants John Mahaffey and Dorothy Mahaffey purchased a 1961 Chevrolet pick-up truck. On May 15, 1970, the Mahaffeys sold the truck to Ray Cuzzart. They assigned the certificate of title to Cuzzart and delivered the truck to Cuzzart, and Cuzzart gave the Mahaffeys a post-dated check for $200.00. Between May 22 and May 27, 1970, Cuzzart went to Bonnell's car lot and traded the 1961 Chevrolet truck for another vehicle. Cuzzart did not make the required assignment of title for the 1961 truck to Bonnell at the time of the trade or at any other time. Bonnell testified that Cuzzart gave him the "pink slip" [2]

2. The "pink slip" is the duplicate copy of the application for change of title.

which was later lost and Cuzzart promised to bring the certificate of title to Bonnell when he received it. Cuzzart later delivered the certificate to Bonnell but did not execute the assignment of title.

When the Mahaffeys presented Cuzzart's post-dated check for payment, it was returned marked "Unpaid-Insufficient Funds." The Mahaffeys contacted the prosecuting attorney and the sheriff concerning the bad check, but neither of these authorities could locate Cuzzart.

About the first of July, 1970, the Mahaffeys discovered the truck parked on a lot which they understood Cuzzart had been renting. John Mahaffey and some associates went to the lot and peaceably took possession of the truck and towed it to the Mahaffeys' property. The lot, it was later revealed, belonged to Bonnell. However, Bonnell had permitted Cuzzart to use this lot.

Bonnell discovered that the truck was missing in early July, 1970 and after ascertaining its whereabouts, approached the Mahaffeys and demanded its return. The Mahaffeys refused.

Bonnell instituted this replevin suit against the Mahaffeys for the return of the truck in the magistrate court. The magistrate court found in favor of plaintiff Bonnell. Defendants appealed and the Circuit Court entered judgment against the plaintiff and surety in the replevin bond, ordered the plaintiff to return the truck or to pay over the value of the truck. The Court also awarded the defendants $100.00 in damages for the taking and detaining of said property by plaintiff and assessed costs against him. Plaintiff filed a Motion for Judgment for Plaintiff or For New Trial, which was overruled by the trial court. Plaintiff appealed.

The Circuit Court, acting in its dual capacity as trier of fact and law in this jury waived case, made certain findings of fact and conclusions of law in reciting its judgment. It found that the defendants had assigned the certificate of title for the 1961 Chevrolet truck to Cuzzart in accord with the Missouri statutes, in return for a post-dated check that was later dishonored. It also found that Cuzzart did *not* make a proper assignment of title to Bonnell at the time of the trade or at any time thereafter. Bonnell let Cuzzart drive off in the truck that Cuzzart had traded for, but Bonnell did not assign the title to Cuzzart. In addition, the court noted that previous to the trade Bonnell had permitted Cuzzart to use, free of charge, space on his used car lot for working on cars and storing tools.

■ It is well settled that recovery in replevin depends upon the strength of plaintiff's claim, not the weakness of defendant's. First National Bank of Clayton v. Trimco Metal Products Co., 429 S.W.2d 276 (Mo.1968). Therefore, Bonnell has the burden of proving his superior right to possession and defendants' wrongful detention. Auffenberg v. Hafley, 457 S.W.2d 929 (Mo.App.1970); Citizens Discount and Inv. Corp. v. Wood, 435 S.W.2d 717 (Mo. App.1968). This Court is of the opinion that plaintiff has not sustained this burden.

■ Plaintiff argues: first, that he is an innocent purchaser for value; secondly, he holds a "special property interest" in the truck; thirdly, this "special property interest" is superior to defendants' interest; lastly, defendants are mere trespassers.

The plain and unequivocal language of Section 301.210(4) declares that the sale of a motor vehicle without assignment of title is absolutely "fraudulent and void." In Bordman Investment Co. v. Peoples Bank of Kansas City, 320 S.W.2d 72 [7] (Mo. App.1958), the court summed up the position of Missouri courts that this statute must be strictly enforced, stating at p. 78: "The provisions of the statute that the sale of any motor vehicle which has been registered under the laws of this state without the assignment of the certificate of ownership shall be fraudulent and void is abso-

lute, mandatory and both rigidly and technically enforced." [3] And in State v. Glenn, 423 S.W.2d 770 (Mo.1968), after again stating that Section 301.210 must be rigidly enforced and required strict technical compliance, the court went on to explain the reasons for strict compliance. The reasons are: to prevent traffic in stolen automobiles; to aid in the apprehension of criminals; and to protect the innocent and guileless from the machinations and wiles of the wicked. (l.c. 774).

In a case factually similar to the instant case, Anderson v. Arnold-Strong Motor Company, 229 Mo.App. 1170, 88 S.W.2d 419 (1935), the Court, in interpreting an identical statutory provision, held that: "It is well settled that unless the certificate is assigned and passed to the buyer of the motor vehicle at the time of its delivery the sale is absolutely void and no title to the vehicle passes." (l.c. 421.) This Court, in Robinson v. Poole, 232 S.W.2d 807 (Mo.App.1950), was called upon to construe *Anderson* as it applied to a fact situation essentially identical to the one involved in the case at hand. We feel the treatment of the problem in *Robinson* is dispositive of this appeal.

As we stated in *Robinson,* the failure of the used car dealer to receive the certificate of title assigned to him resulted in his receiving *no right or title* to the automobile. Therefore, as between the original owner (defendants here) and the used car dealer (plaintiff here), the dealer did not become "an innocent purchaser for value." (l.c. 809). Under the mandate of Section 301.210 because of the non-compliance with this statute the sale to plaintiff was "fraudulent and void." Therefore plaintiff could not become an innocent purchaser for value and did not acquire any "special property interest" in the truck.

The plaintiff relies heavily on Inland Discount Corp. v. St. Louis Auto Auction Barn, 303 S.W.2d 185 (Mo.App.1957), decided by this Court. The facts in that case are readily distinguishable from the facts here. In *Inland* one Gray delivered an auto to the defendant for the purpose of auctioning it. Page purchased the auto at the auction. Gray executed the certificate of title to Page. Page then conveyed the auto to the plaintiff, delivered the certificate of title to plaintiff, and signed a note and chattel mortgage in favor of plaintiff. Page's check to defendant bounced and he also defaulted on the note to plaintiff. Plaintiff brought an action for replevin against defendant who had maintained possession of the auto after the auction. In defending the replevin action the defendant (auction company) contended that the fact that Page's check to it bounced made the sale to Page void. This Court affirmed the judgment for replevin which was in favor of plaintiff.

Plaintiff relies on language in *Inland* stating that a sale is not fraudulent and void simply and solely because the consideration fails, and this is because some protection is to be afforded innocent third parties. We agree with this language. However, as we have pointed out the plaintiff here *is not* an innocent purchaser and cannot, therefore, seek the protection mentioned in *Inland.*

We have reviewed the other cases cited by plaintiff and feel that these cases, as well as *Inland,* are neither beneficial to the points raised by plaintiff nor determinative of any of the issues in this case.

We find no reversible error in the record and affirm the judgment of the trial court.

WEIER and CLEMENS, JJ., concur.

---

3. It has even been held that the failure to comply strictly with this statute does not even give the purchaser an insurable interest in the motor vehicle. Bordman Investment Co., supra, p. 78; Kelso v. Kelso, 306 S.W.2d 534, 538 (Mo.1957).