192 N.J. Super. 189 (1983)
469 A.2d 519
ROSE & GARY MARTIN, PLAINTIFFS,
v.
GEORGE NORTON NAGER, DEFENDANT.
Superior Court of New Jersey, Chancery Division Camden County.
Decided August 5, 1983.
*193 Michael J. Veneziani for plaintiffs (Joseph P. Briglia, attorney).
Arthur F. Risden for defendant (Archer & Greiner, attorneys).
DEIGHAN, J.S.C.
This controversy requires a determination of the ownership of an automobile and involves the interplay between the Motor Vehicle Certificate of Ownership Law (MVCOL), N.J.S.A. 39:10-1 et seq. and the Uniform Commercial Code-Sales (UCC), N.J.S.A. 12A:2-101 et seq. It arises out of a sale on consignment of a motor vehicle through an automobile dealer. Plaintiffs Rose and Gary Martin bought an automobile owned by defendant George Norton Nager through a dealer, Bellbrook Volkswagen, Inc., (Bellbrook) who converted the purchase price and is now insolvent. Plaintiffs and defendant both are victims of Bellbrook's fraud. Plaintiffs have possession of the automobile, defendant has possession of the certificate of title, Bellbrook is in bankruptcy and its two principals are in jail. The court is aware of at least 21 more transactions with the same or similar scenario involving Bellbrook.
The facts surrounding this controversy are not in dispute. In the fall of 1982 defendant placed ads in a local newspaper offering his 1975 BMW 530 automobile (BMW) for sale. He received a telephone call from a salesman from Bellbrook located in Brooklawn, New Jersey, who indicated that Bellbrook had been very successful in selling fine used cars under a consignment agreement. Under this arrangement Bellbrook would attempt to sell the automobile, absorb all the advertising costs and arrange for financing of the sale. If it were sold the defendant would receive an agreed price and Bellbrook would keep all proceeds of sale in excess of agreed price.[1]
*194 On October 18, 1982 defendant took the BMW to Bellbrook and met with one of the principals, Michael Sargent. Bellbrook was an authorized automobile dealer with a display room and a large outside area with a selection of many automobiles. Defendant agreed to accept $5,800 as his share of the sale and entered into a consignment agreement on the same date which provided:
I, George N. Nager, hereby deliver and consign to Bellbrook Volkswagen, Inc. for a period of 21 days my 1975 BMW 530 (vehicle identification No. 5020572), the receipt of which is hereby acknowledged by Bellbrook. If Bellbrook sells my BMW it shall pay me Five-Thousand Eight-Hundred Dollars ($5,800) at the time I deliver to it my certificate of title for the BMW duly endorsed to transfer, and it shall be entitled to retain all proceeds realized on such sale in excess of $5,800....
Defendant delivered the BMW together with the keys to Bellbrook but retained the certificate of ownership which he agreed to endorse when he was paid $5,800. He agreed to permit Bellbrook to offer for sale the BMW for a period of 21 days. In mid-November, defendant called Bellbrook to find out if it had any success in selling his automobile. He was informed that while the automobile had not been sold it had generated considerable interest. He agreed to leave the automobile with Bellbrook under the same conditions for another unspecified period of time.
On December 7, 1982 plaintiffs purchased defendant's vehicle from Bellbrook for $7,155 which included the sales tax and other miscellaneous charges. Bellbrook delivered the vehicle to the plaintiffs and assured them the certificate of title would be delivered promptly. After several unsuccessful attempts to get the certificate of title, on January 10, 1983, plaintiffs went to the Division of Motor Vehicles and, after presenting their proof of purchase, received a temporary registration which was effective only until January 31, 1983.
*195 On January 25, 1983 defendant went to Bellbrook to retrieve his automobile since he had not been notified that it had been sold. He was shocked to learn that his automobile had been sold on December 7, 1982. He demanded his $5,800 but Sargent indicated that he was waiting for a check to clear the bank. Sargent gave defendant a check dated January 27, 1983. The check was deposited but returned with a notation that payment had been stopped. After several unsuccessful attempts to obtain payment from Bellbrook, defendant reported the matter to the Brooklawn chief of police.
On February 24, 1983 plaintiffs filed this action to restrain defendant from repossessing the automobile and to require transfer of the certificate of title to them. An order was entered restraining the defendant from repossessing the automobile. Subsequently, on defendant's application, an order was entered restraining plaintiffs from using the automobile and requiring them to provide for its storage as well as a certificate insuring defendant as a loss payee on their insurance policy.
Plaintiffs base their claim of ownership of the BMW on N.J.S.A. 12A:2-403(2) and (3) which provides:
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entrustor to a buyer in the ordinary course of business.
(3) Entrusting includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
They contend they are buyers in the ordinary course of business. A "buyer in the ordinary course of business" is a "person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third-party in the goods, buys in ordinary course from a person in the business of selling goods of that kind...." N.J.S.A. 12A:1-201(9).
Plaintiffs maintain that these sections of the UCC control the present case because defendant entrusted his BMW to Bellbrook *196 with an express authorization to sell the automobile. Relying upon the representations of Bellbrook, plaintiffs assert they purchased the automobile in good faith without notice of the defendant's ownership interest. This, they contend, is in accord with a strong policy in New Jersey to protect buyers in the ordinary course of business and to facilitate commercial transactions.
Defendant counters by asserting that plaintiffs' purchase is in violation of the Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10-1 et seq. and therefore void and unenforceable. He points out that under the MVCOL, "when a used motor vehicle is sold in this state, the seller shall ... execute and deliver to the purchaser, an assignment of the certificate of ownership...." N.J.S.A. 39:10-9. It further requires that no person shall sell or purchase any motor vehicle in this state, except in the manner and subject to the conditions provided in this chapter. N.J.S.A. 39:10-5. Since defendant never relinquished his certificate of ownership, he asserts that the sale of the automobile to plaintiffs was in contravention of the statute, and therefore void and unenforceable.
Defendant further argues that the MVCOL is a more specific legislative enactment on the appropriate method to transfer ownership to motor vehicles. It should, he concludes, be given greater effect than the more general provision of the UCC which does not address the unique problems of fraud and theft which give rise to the title system for motor vehicles. N.J.S.A. 39:10-3. Moreover, defendant asserts that plaintiffs did not act in good faith pursuant to N.J.S.A. 12A:1-201(9) because they took delivery of the BMW without receiving the certificate of title or at least making a demand to see the certificate of title at the time of the sale. Lastly, defendant contends that the mere delivery of the motor vehicle alone is insufficient to create an estoppel or otherwise defeat the owner's rights in the motor vehicle citing, Nelson v. Wolf, 4 N.J. 76 (1950) and Arsen v. Motor Vehicles Div. Director, 61 N.J. Super. 131 (Law Div. 1960).
*197 The arduousness of this decision is due to the fact that plaintiffs and defendant are both innocent victims of the fraud perpetrated by Bellbrook. The apparent conflict between the provisions of the UCC and the MVCOL arises because the transfer of a motor vehicle, unlike the transfer of other chattels, must be made in accordance with documentary evidence executed only in the method prescribed by the MVCOL. State v. Bott, 53 N.J. 391 (1969); Merchant's Security Corp. v. Lane, 106 N.J.L. 576 (E. & A. 1930); U.S. v. One 1939 Cadillac, 36 F. Supp. 847 (D.N.J. 1941). But these statutes should be read and construed together and given fair effect to both if possible. See Eastern Acceptance Corp. v. Camden Trust Corp., 33 N.J. 227, 234 (1968) where it was held that the MVCOL, while prescribing a statutory mode for transferring title, contained nothing to reveal the legislative intent to alter or impair provisions of the Uniform Trust Receipts Act. Also, N.J.S.A. 12A:10-104 of the UCC provides that the MVCOL, N.J.S.A. 39:10-1 et seq. and all amendments are specifically saved from repeal and shall remain in effect as provided in N.J.S.A. 12A:9-302. However, this latter section applies only to security interests. Muir v. Jefferson Credit Corp., 108 N.J. Super. 586, 591 (Law Div. 1970); In re Manufacturers Credit Corp., 441 F.2d 1313, 1317 (3 Cir.1971).
The basic goals of the UCC and MVCOL are in perfect harmony; the UCC is to protect good faith purchasers and, as will be later discussed, the purpose of the MVCOL is to protect innocent purchasers of motor vehicles. Therefore, these statutes should complement and support each other rather than contradict or abrogate the other as suggested by defendant. Other jurisdictions have reconciled sections 2-403(2), (3) of the UCC with comparable motor vehicle titling acts. In Pfluger v. Colquitt, 620 S.W.2d 739 (Tex.Civ.App. 1981) the court stated: "We do not agree that section 2-403(b) of the Code conflicts with the Certificate Title Act." The court "... conclude[d] that the two statutes here in question may reasonably be construed so as to give effect to both." At 741.
*198 In Security Pacific Nat'l Bank v. Goodman, 24 Cal. App.3d 131, 100 Cal. Rptr. 763 (Ct.App. 1972) the court observed that "... there is no inconsistency between section 2-403 [UCC § 2-403] and the registration statutes as applied to the facts of this case." The court held:
It is thus not inconsistent with the Vehicle Code to provide that an entrusting of possession of a boat or a motor vehicle to a merchant empowers him to transfer the interest of the transferor. [24 Cal. App. at 137, 100 Cal. Rptr. at 768]
The facts in Pfluger and Security Pacific are strikingly similar to the facts in the present case. Accord Milnes v. Gen. Elec. Credit Corp., 377 So.2d 725 (Fla.App. 1979); Island v. Warkenthien, 287 N.W.2d 487 (S.D.Sup.Ct. 1980) and Godfrey v. Gilsdorf, 86 Nev. 714, 476 P.2d 3 (Sup.Ct. 1970) where the courts also expressly dealt with and reconciled section 2-403(2) of the UCC and Motor Vehicle Titling Statutes in similar factual situations. See also cases cited infra.
The purpose of the Motor Vehicle Certificate of Ownership Law is to regulate and control titles and possession of motor vehicles and to prevent the sale and purchase of motor vehicles with fraudulent titles. N.J.S.A. 39:10-3. The scheme of the motor vehicle certificates is to prevent the transfer of stolen vehicles, General Motors Acceptance Corp. v. Smith, 101 N.J.L. 154 (E. & A. 1924); Kutner Buick, Inc. v. Strelecki, 111 N.J. Super. 89, 100 (Ch.Div. 1970) to regulate exclusively titles and evidence of ownership and to prevent fraud and theft of motor vehicles, Nat'l City Bank of New York v. DelSordo, 16 N.J. 530, 540 (1954) and to prevent sales of automobiles to innocent purchasers by one having no legal title thereto. Stein v. Scarpa, 96 N.J.L. 86, 87 (Sup.Ct. 1921). The MVCOL is largely designed to protect the ordinary automobile buyer. Eastern Acceptance Corp. v. Camden Trust Co., supra 33 N.J. at 234. The act seeks to accomplish this by requiring the vendor to transmit with the delivery of the car the original bill of sale as evidence of title. Stein v. Scarpa, supra 96 N.J.L. at 87.
N.J.S.A. 39:10-9 requires that when a used motor vehicle is sold, the seller shall execute and deliver to the purchaser an *199 assignment of the certificate of ownership. N.J.S.A. 39:10-11 requires that a purchaser of a motor vehicle shall, within ten days after its purchase, submit to the director evidence of the purchase. Upon presentation of the certificate, with the proper assignment and certification of the seller, a record of the transaction is made and filed by the director and a certificate of ownership issued and delivered to the buyer. N.J.S.A. 39:10-21 requires all dealers of motor vehicles to retain certificates of ownership for all motor vehicles in their possession. Failure to produce the certificate after a demand by the commissioner or his agent may result in a seizure and impounding of the motor vehicle.
In order to effectively transfer title to a motor vehicle for the purposes of insurance, there must be a strict compliance of the statutory requirement. Merchant's Indemn. Corp. v. Eggleston, 68 N.J. Super. 235 (App.Div. 1961), aff'd 37 N.J. 114 (1962); Eggerding v. Bicknell, 20 N.J. 106 (1955); Velkers v. Glen Falls Ins. Co., 93 N.J. Super. 501 (Ch.Div. 1967), aff'd 98 N.J. Super. 166 (App.Div. 1967), certif. den. 51 N.J. 388 (1968). But the common denominator in these cases is that the courts were looking to the title owner to find insurance coverage. See Friedman v. Royal Globe Ins. Co., 137 N.J. Super. 192, 196 (Law Div. 1975). By contrast, for insurance purposes, the true owner of an automobile may be one other than the registered owner. American Hardware Mut. Ins. v. Muller, 98 N.J. Super. 119, 129 (Ch.Div. 1967), aff'd 103 N.J. Super. 9 (App.Div. 1968), certif. den. 53 N.J. 85 (1968) (where it was held that a liability policy to one other than the title owner was valid when the evidence showed that the record of registration was for convenience only but that the insured was the beneficial owner).
On the other hand, where there is no intention to evade the statute and the parties contemplated the prompt execution and delivery of the prescribed title papers, the transaction is not to be considered void under the MVCOL merely because the papers were not delivered at the moment the bargain was struck *200 nor when the buyer took possession of the vehicle. Ethridge v. Allied Equipment & Supplies Co., 26 N.J. Super. 586, 587-88 (App.Div. 1953); Buttinghausen v. Rappeport, 131 N.J. Eq. 252 (Ch. 1942); Gaub v. Mosher, 3 N.J. Misc. 605 (Ch. 1925). Gaub and Buttinghausen are two pre-code New Jersey chancery cases involving factual situations similar to the facts in the present case. In both cases the purchaser bought a motor vehicle from a dealer and took delivery without receiving the certificate of title. Before title was delivered the dealer became involved in financial difficulties. In both cases the purchaser instituted a suit for specific performance to require the delivery of the certificate of title.
In Gaub, defendant sold an automobile to a car dealer in part-payment for a car she was to purchase. The bill of sale was in defendant's safe deposit box and was not contemporaneously assigned or delivered to the car dealer. She promised to get it in a few days. The car dealer sold the car to plaintiff and advised him of these facts. Plaintiff went to defendant to ask about the condition of the car and the bill of sale. He talked to defendant's husband who confirmed that the bill of sale was to be delivered in a few days when his wife had an opportunity to get it from the safe deposit box. Plaintiff then paid the purchase price to the dealer. The dealer became involved in financial difficulties and defendant did not receive delivery of the car she purchased. She then refused to deliver the bill of sale to the dealer. Plaintiff there, as plaintiff in the present case, sued for specific performance to require the assignment and delivery of the bill of sale and for an injunction to restrain defendant from prosecution of a suit in replevin to recover the automobile.
The chancery court held that it was the duty of the defendant to assign and deliver the bill of sale to the car dealer not only *201 because of her expressed promise but because of the statute.[2]Id. at 606. The dealer's right to enforce that duty passed to the plaintiff who was entitled to an order against defendant to assign and deliver the bill of sale. While the dealer would have been a proper party it was held he was not a necessary party. Ibid.
In requiring defendant to deliver and assign the bill of sale, the chancery court stated:
In the present case there was no attempt or intent to violate the statute. The contract between the defendant and Sharp [car dealer] provided for the assignment and delivery of the bill of sale; so, likewise, the contract between Sharp and the complainant, at least, impliedly. There was the expectation and intent of all parties to comply with the statute. The violation is the act of defendant, who subsequently changed her mind and refused to assign and deliver the bill of sale. The decree for performance is not in aid of a violation of the statute, but in aid of avoiding a violation thereof. [Id. at 608; brackets supplied].
In Buttinghausen plaintiff on July 30, 1938 purchased an automobile from a dealer, Sonnell Motors, Inc. The custom of the automobile trade was for the dealer, on behalf of the purchaser, to submit to the commissioner of motor vehicles the title papers and pay the filing fees to have the registration plates transferred to the car. Plaintiff closed the deal on Saturday after the motor vehicle agent's office closed. Miller, president of Sonnell Motors, suggested that plaintiff drive the car with dealer's plates over the weekend and bring the car in when he would transfer the plates and deliver the bill of sale on Monday.
When plaintiff returned he was told that Miller was not available. Plaintiff called several times and was put off with one excuse after another until August 18, 1938. At that time he *202 found that defendant Rappeport, as assignee for the benefit of creditors, was in possession of Sonnell Motors. He learned that the title papers for the automobile that he bought were in the possession of the defendant Bank of Montclair. A month before the sale of the automobile to plaintiff, Sonnell Motors borrowed from the bank on a promissory note and deposited with the bank as collateral security the bill of sale to the automobile, the title to which was in the name of Sonnell Motors.
Plaintiff instituted suit to compel defendant Rappeport, as assignee for the benefit of creditors, to assign the bill of sale to plaintiff. Since he had been unable to have the car registered or to use the car for nearly a year, plaintiff also sought damages against the bank. The bank characterized plaintiff as an "incautious purchaser" and hoped that either the debtor or the purchaser would be required to pay the debt because the bank had the bill of sale. Id. 131 N.J. Eq. at 254.
The court noted N.J.S.A. 39:10-21 which requires all dealers to have title papers for all motor vehicles which are in their possession and to produce the papers to the commissioner upon demand. The court observed that since dealers should at all times have within their control the title papers for their cars, the pledge of the bill of sale whereby the bank took possession and control of the instrument was contrary to the statute and void.
The bank suggested that since title was not transferred simultaneously with the possession of the motor vehicle, that plaintiff should be denied relief because he himself disregarded the statutory plan of transferring automobile titles. The court noted that plaintiff had tried not to evade the statute but to the contrary, from the very beginning, he attempted to get legal title in the manner prescribed by the statute but had been frustrated solely by the action of the bank. Specific performance was granted against the bank requiring it to surrender the bill of sale and requiring Rappeport, the assignee, to execute an assignment of the certificate of title. The court also awarded *203 damages to plaintiff against the bank for the loss of the use and deterioration of the vehicle for a period of one year.
The holdings in Gaub and Buttinghausen are perhaps best summarized in Levine v. Nielson, 37 Ohio App.2d 29, 32, 306 N.E.2d 173, 179 (Ct.App. 1973): "The Certificate of Title Act was adopted to protect the innocent purchasers, and to allow the public to rely on duly issued evidence of title. It was not meant to, and does not prevent a court of equity from ordering that title be transferred if the holder has bound himself to do so directly or through an agent." Emphasis in original.
Next to be considered is the UCC. Section 2-403(2) of the UCC (N.J.S.A. 12A:2-403(2)) provides that any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. 67 Am.Jur.2d, Sales, § 274 at 411. The UCC provisions substantially change pre-code law to enhance the protection given buyers in the ordinary course of business from dealers of such goods. Thus, under the code, delivery to a merchant for purposes of sale or resale expands the principle of prior law that delivery to a factor or dealer for such purposes confers on the latter power to make a valid sale even though made under circumstances violating the particular authority given. Id. at 411-412. Moreover, the UCC broadens pre-code law so that even a bailee, who has no authority whatever to make a sale, can confer good title to goods on a third-party, if such bailee regularly sells the same kind of goods. In addition, a sale by a merchant-intermediary in violation of the terms under which the goods were entrusted to him will, nevertheless, confer good title on a buyer in the ordinary course of business. Id. at 412.
The New Jersey study comment to N.J.S.A. 12A:2-403 subscribes to the foregoing statements from American Jurisprudence. "Subsection 2-403(2) takes a large step forward in protecting `buyers in the ordinary course of business'...." At *204 295. The comment continues: "[An entruster] of goods to a merchant who deals in goods of that kind alone gives the merchant power to transfer all the rights of the entruster to a buyer in the ordinary course of business." Ibid. The comment then concludes:
The subsection recognizes the commercial desirability of increasing the marketability of goods, and this recognition is implemented by saying, in effect, to buyers in the ordinary course of business that your purchase gives you all the interest in the goods that the merchant has by the power to transfer (2-403(1)), plus all the interest the person had who entrusted the possession of the goods to the merchant. [Ibid; emphasis supplied]
Under the UCC the retention of the certificate of title of the BMW by defendant and the reservation of the title as between defendant and Bellbrook is ineffective as against plaintiffs. Medico Leasing Co. v. Smith, 457 P.2d 548 (Okl.Sup.Ct. 1969) (plaintiff kept the certificate of title and instructed defendant used car dealer not to sell without approval of plaintiff; held: plaintiff estopped from asserting title against a bona fide purchaser as the certificate of title is "not a muniment of title" but is merely intended to protect the public against theft); see also Christopher v. McGehee, 124 Ga. App. 310, 183 S.E.2d 624 (1971), aff'd 228 Ga. 466, 186 S.E.2d 97 (1971). Defendant as an entruster gave Bellbrook "power to transfer all rights [of defendant] to a buyer in the ordinary course of business." N.J.S.A. 12A:2-403(2); see New Jersey study comment to § 2-403, supra. The sale was valid but defendant failed to execute and deliver an assignment of the certificate of ownership as required by N.J.S.A. 39:10-9. Cf. A. Cresci & Son, Inc. v. Steiker, 7 N.J. Super. 76 (App.Div. 1950) and cases cited at 79-80 in which a seller is precluded from recovery of the purchase price of a motor vehicle if, in evasion of the statute, he failed to deliver the bill of sale to the purchaser.
In view of the foregoing, it is held that title to the BMW is vested in the plaintiffs. The purpose of the MVCOL is not circumvented by this holding but to the contrary is accomplished by requiring the defendant to fulfill an obligation to plaintiffs. As between the parties, a sale without an assignment of a *205 certificate of ownership may be effective where there was no intent to evade the MVCOL. See Ethridge v. Allied Equip. & Supply Co., supra (where the court determined that as between the parties the sale was complete and that upon full payment of the purchase price the seller was required to assign the certificate of ownership); see also Gaub v. Mosher and Buttinghausen v. Rappeport, both supra; cf. Kaplan v. Walker, 164 N.J. Super. 130, 134 (App.Div. 1978) (where the failure to file a lien as required by N.J.S.A. 39:10-8, -9 and -11 of the MVCOL does not affect the validity of an instrument creating a lien as between the parties thereto). As stated in Security Pacific Nat'l Bank v. Goodman, supra: "It has long been established that a transfer of the property interest in a motor vehicle is effective as between the immediate parties even though they have not complied with the registration statute." 100 Cal. Rptr. at 767, 24 Cal. App.3d at 136. Again, "... the sale of a vehicle without compliance with the [Motor Vehicle] Act may be effective as between the parties and thus give the purchaser a right to demand a proper transfer of the certificates." Pfluger v. Colquitt, supra at 742.
Numerous other jurisdictions have also held that where a seller entrusts a motor vehicle to a dealer who sells it without delivery of the certificate of ownership as required by the Motor Vehicle Title Act, a bona fide purchaser prevails as against the seller. The courts of at least 12 jurisdictions agree that under substantially identical facts as presented here involving construction of the motor vehicle title statutes and the UCC, the good faith purchaser prevails in the triangulation between a seller-entruster, dealer-entrustee and purchaser. Security Pacific Nat'l Bank v. Goodman, supra (Cal.); Milmes v. Gen. Elec. Credit Corp., supra (Fla); Christopher v. McGehee, supra (Ga.); Humphrey Cadillac & Oldsmobile, Inc. v. Sinard, 85 Ill. App.2d 64, 229 N.E.2d 365 (Ct.App. 1967); Godfrey v. Gillsdorf, supra (Nev.); Fuqua Homes, Inc. v. Evanston Building & Loan Co., 52 Ohio App.2d 399, 370 N.E.2d 780 (Ct.App. 1977); Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588 (Sup.Ct. 1950); American Lease Plans, Inc. v. R.C. Jacobs Plumbing, Heating & Air *206 Conditioning, Inc., 274 S.C. 28, 260 S.E.2d 712 (Sup.Ct. 1979); Island v. Warkenthien, supra (S.D.); Couch v. Cockroft, 490 S.W.2d 713 (Tenn. Ct. App. 1972); Pfluger v. Colquitt, supra (Tex.); Williams v. Western Surety Co., 6 Wash. App. 300, 492 P.2d 596 (Ct.App. 1972).
In addition to the estoppel theory under the UCC, some courts have invoked the rule that where one of two innocent parties must suffer through the act of negligence or fraud of a third-party, the loss should fall upon the one whose conduct created the circumstances which enabled the third-party to perpetrate the wrong or cause the loss. Al's Auto Sales v. Moskowitz, supra, 203 Okl. at 614, 224 P.2d at 591; Fuqua Homes, Inc. v. Evanston Building & Loan Co., supra, 52 Ohio App.2d at 402, 370 N.E.2d at 783; Motor Credit Corp. v. Wollverton, 99 So.2d 286, 288 (Fla.Sup.Ct. 1956). Other courts have rationalized that the loss must fall upon the consignor since it "placed the trucks in the stream of commerce." Coffman Truck Sales v. Sackley Cartage Co., 58 Ill. App.3d 68, 69, 15 Ill.Dec. 554, 555, 373 N.E.2d 1026, 1027 (App.Ct. 1978); that the motor vehicle statute does not apply where "an innocent purchaser stands to lose to another party, albeit an innocent one at the hands of a fraud-feasor or wrong-doer whose conduct was made possible by the acts of another party." American Lease Plans, Inc. v. R.C. Jacobs Plumbing, Heating & Air Conditioning, Inc., supra, 274 S.C. at 32, 260 S.E.2d at 714 (Sup.Ct. 1979) and that the seller "is the party who set in motion the chain of events leading to the title dispute." Island v. Warkenthien, supra, 287 N.W.2d at 489.
Many years before the UCC, the Supreme Court of California in the landmark case of Kenny v. Christianson, 200 Cal. 419, 253 P. 715 (Sup.Ct. 1927) invoked the doctrine of estoppel against a seller from using the Motor Vehicle Act under the same set of facts as in the present case. There, plaintiff placed a motor vehicle in the possession of a dealer to find a purchaser. The dealer sold the car to defendant for cash and absconded with the proceeds. Plaintiff sought to recover the car upon the ground that defendant never received the registration certificate citing the statute which provided that until such a certificate was *207 issued, an intended transfer was "not to be valid or effective for any purpose." The Supreme Court of California held that plaintiff was not entitled to rely upon the provisions of the Motor Vehicle Act to sustain their own title or to defeat defendant's right to possession.
The rationale for the consistency between section 2-403(2) of the UCC and the Motor Vehicle Title Act as stated in Security Pacific Nat'l Bank v. Goodman, supra, is "... that the language of the registration statute has not been given a literal application to allow a seller to set aside a sale which he authorized and intended to make." The California Court of Appeal reasoned:
It is not the purpose of the registration statute to give the former owner a basis for recovering the property after the dealer has resold it for value. A purpose underlying section 2403 [UCC Section 2-403] is to protect the merchantability of goods in possession of a dealer. That policy is perfectly consistent with the Vehicle Registration Statutes as they have been construed in the courts of this state and has applied to the facts of this case. [24 Cal. App.2d at 138, 100 Cal. Rptr. at 768; brackets supplied].
In Island v. Warkenthien the South Dakota Supreme Court opined that:
the spirit and intent of the title statute, which is to prevent fraud through the sale of stolen cars, [citations omitted] would not be served in a case involving a bona fide purchaser for value without notice. The Commercial Codes provisions dealing with entrustment and buyers in the ordinary course of business are clearly applicable to facts presented here. Therefore, using the general rule of pari materia, the logical result is to give effect to the Commercial Code provisions rather than the title statutes since the latter statutes were not meant to penalize good faith purchasers. By construing the statutes in this manner, both the title statutes and the Commercial Code provisions can be given effect without diminishing the effect of the other. [287 N.W.2d at 489].
Defendant's contention that plaintiffs did not act in good faith because they took delivery of the BMW without receiving the certificate of title or at least making a demand to see the certificate of title at the time of the sale is rejected. This same contention was made and rejected in Buttinghausen v. Rappeport, supra and was also rejected more recently in Cunningham v. Camelot Motors, Inc., 138 N.J. Super. 489 (Ch.Div. 1975). There, buyers of automobiles brought actions against an auto dealer and its secured creditor to require the defendants to endorse certificates of origin for automobiles to plaintiffs. The *208 dealer had delivered the certificates of title to its bank as security. Plaintiffs paid for and were given possession of the automobiles with a promise to deliver certificates of ownership and registrations a few days later. The dealer failed to deliver the certificates of ownership. There, as here, both plaintiffs claim to be buyers in the ordinary course of business under N.J.S.A. 12A:1-201(9). Id. at 493. The bank claimed that the plaintiffs were not good faith purchasers because the dealer did not deliver the certificates of ownership at the time of delivery of the automobiles. The court held that the plaintiffs were duped and under the circumstances their rights as innocent purchasers were not impaired. Id. at 493, n. 4.
This same argument was made by the seller and rejected in Godfrey v. Gilsdorf, supra, 86 Nev. at 718, 476 P.2d at 6. In American Lease Plans, Inc. v. R.C. Jacobs Plumbing, Heating & Air Conditioning, Inc., supra, the defendant as a buyer in the ordinary course of business, could reasonably assume that the dealer was the true owner because of the dealer's possession of the truck. The failure of the buyer to demand to look at the title did not deprive it of a good faith status. "Good faith is defined as honesty in fact in the conduct or transaction concerned ... appellants' [buyers] failure to investigate proved unwise, but it did not amount to dishonesty." 274 S.C. at 32, 260 S.E.2d at 714. In Ohio, mere possession of the automobile is sufficient indicia of ownership in a conditional sale vendee. Hardware Mutual Casualty Co. v. Gall, 15 Ohio Ct.2d 261, 267, 240 N.E.2d 502, 506 (Sup.Ct. 1968). In Fuqua Homes, Inc. v. Evanston Building & Loan Co., supra, it is stated: "The purchasers have no obligations under the law to demand or search the certificate of origin." 52 Ohio App.2d at 404, 370 N.E.2d at 784. The rationale for this is:
... that the law creates no duty in the purchaser or its financing agency to hold back the purchase price until a clear title is received. To require the purchase or financier to receive clear title before paying would stop the free flow of *209 commerce and impede established commercial practices in motor vehicle transactions. [Ibid.]
In Milnes v. General Elec. Credit Corp., supra, the buyer was held to be a buyer in the ordinary course of business, notwithstanding defendant's objection that plaintiff-buyer's occupation as a police officer should have put him on notice when the certificate of title was not delivered at the time of transfer of possession of the automobile. In Couch v. Cockcroft, supra, the failure of a buyer, who 15 years previous to the purchase had been a car dealer, to obtain from seller a certificate of title in compliance with the Motor Vehicle Title and Registration Law did not in itself deny the buyer the status of a buyer in the ordinary course of business under section 403(2), (3) of the UCC and the sale was held not to be void.
Nor may defendant find any refuge in Nelson v. Wolf, supra or Arsen v. Motor Vehicles Div. Director, supra. Nelson was governed by the Uniform Sales Act then in effect. R.S. 46:30-29. This statute provided that "(1) ... where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had...." Ibid. This section was repealed by the UCC. N.J.S.A. 12A:10-105, superceded by N.J.S.A. 12A:2-403(2) (Appendix to Uniform Commercial Code at 678) which, as we have seen, specifically provides that any entrusting of possession of goods to a merchant who deals with goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business. In other words the UCC seems to be the converse of the prior section in the former Uniform Sales Act. The Supreme Court held that the consignee had no actual or apparent authority to sell unless to an innocent purchaser in the regular course of business, but that the plaintiff was "clearly not such a bona fide purchaser in the regular course of business." 4 N.J. at 81. Again in Arsen it was held that plaintiff, as a used car dealer for ten years was not a bona fide *210 purchaser and was put on notice that there was questionable title because the title into the seller was dated the day before it was sold to plaintiff. When plaintiff attempted to resell it to another dealer, who was more cautious, the second dealer immediately questioned the title because of the date of issuance of the certificate of ownership.
In his brief defendant states that decisional law in title-states provides that in the absence of a proper transfer of a title certificate, title to an automobile will not pass even though the Uniform Commercial Code would so provide, citing Guy Martin Buick, Inc. v. Colorado Springs Nat'l Bank, 184 Colo. 166, 519 P.2d 354 (1974); Bonnell v. Mahaffey, 493 S.W.2d 688 (Mo. Ct. App. 1973); Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co., 465 S.W.2d 933 (Tex. 1971); 3 Anderson, Uniform Commercial Code, § 2-403:10 and 40. He contends that in such title-states it had been specifically held that when the entruster did not deliver a title certificate, the entrustee could not pass title to the motor vehicle notwithstanding § 2-403(2) of the Uniform Commercial Code citing Boswell v. Connell, 556 S.W.2d 624 (Tex.Civ. App. 1977); Ellsworth v. Worthey, 612 S.W.2d 396 (Mo. App. 1981).
Aside from the legion of cases herein cited, the cases relied upon by defendant are either distinguishable or inapposite. Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co., supra, did not deal with the rights as between the parties but dealt with rights of a third-party. 465 S.W.2d at 959. The case recognized that a sale of an automobile in compliance with a certificate of title act is valid as between the parties citing Rush v. Smitherman, 294 S.W.2d 873 (Tex.Civ.App. 1956). The Rush case is cited for the same proposition in Pfluger v. Colquitt, supra, 620 S.W.2d at 742. In Bonnell v. Mahaffey, supra, the Missouri Court found that under the UCC the plaintiff was not an innocent purchaser for value. This was predicated on a prior case which held that unless the certificate is assigned and passed to the *211 buyer at the time of delivery of the motor vehicle the sale is absolutely void and no title to the vehicle passes. This is not the law of New Jersey and other jurisdictions herein cited.
In Guy Martin Buick, Inc. v. Colorado Springs Nat'l Bank, supra, the seller of automobiles brought an action to require the bank which had made a loan to the buyer to deliver the certificates of title to the seller. The bank counterclaimed to compel the seller to deliver the automobiles to it. At the time of the sale the certificates of title were not delivered to the buyer nor had they been transferred by the seller to the bank which financed part of the purchase price. Since the certificates of title were not tendered at the time of the sale, no right, title or interest in the automobiles passed, but subsequently the certificates of title were delivered to defendant bank. This delivery satisfied the requirements of the Colorado Certificate of Title Act, so that once the certificates of title were properly transferred (albeit subsequent to the sale) the vehicle would properly be encumbered the instant title was delivered. Therefore, the bank prevailed against plaintiff. The facts of this case do not support the proposition suggested by defendant but rather the security interest of the bank under the UCC ultimately prevailed. Obviously the transfer of possession of the vehicle without the transfer of the certificate of title was not void but only voidable since a subsequent transfer of title was valid.
Nor does the case of Boswell v. Connell, supra, support the defendant's position. There defendant purchased a truck at a subsequent sale from a third-party who did not have the certificate of title. Under the Texas Certificate of Title Act the sale was void. The court specifically noted that as between the immediate parties to the first sale, the provisions of the act do not render the sale void again citing Rush v. Smitherman, supra. 556 S.W.2d at 625, n. 3. Boswell seems to stand alone under Texas law. An earlier case, Rattan v. Chevrolet, Inc. v. Associates Discount Corp., 443 S.W.2d 360 (Tex.Civ.App. 1969) upheld *212 the title of a bona fide purchaser who, under the equivalent of § 2-403(2) of the UCC, purchased from a car dealer, as opposed to the security interest of defendant who had financed the purchase of the three automobiles. A subsequent Texas Court of Appeals decision, Pfluger v. Colquitt, supra, is practically on all fours with the present case in holding that the innocent purchaser of a motor vehicle prevails over the seller who entrusted the vehicle with a dealer on consignment. Pfluger makes a reference to Boswell as creating an apparent conflict between the Motor Vehicle Title Act and the UCC, 620 S.W.2d at 742, and Boswell is severely criticized in a concurring opinion. Id. at 746-47.
Lastly is the case of Ellsworth v. Worthey, supra, cited by defendant. There the Missouri Court applied Kansas law. The court of appeals held that the buyer could not be a buyer in the ordinary course of business under § 2-403-(2) of the UCC because he did not receive the certificate of title. 612 S.W.2d at 400. It referred to a Kansas case and statute, K.S.A. 8-135(c), which stands for the proposition that when a used vehicle is sold without delivery of a certificate of title at the time possession is given, it is ordinarily fraudulent and void and a violation of the statute is a criminal offense. Ibid. Suffice it to say that such is not the law in New Jersey. The court held that participating in an unlawful transaction would not be "honesty in fact" in not receiving the certificate of title. Be that as it may, Ellsworth seems to stand alone in view of the vast authority hereinbefore cited.
An order may be presented by plaintiffs' attorney requiring defendant to execute and deliver the certificate of title to plaintiffs transferring title of the BMW to plaintiffs. Also, the prior order of the court requiring plaintiffs to store the motor vehicle and to carry insurance with the loss payee in favor of defendant will be vacated.
NOTES
[1] A national network of automobile dealers specializes in these arrangements. They maintain that the dealer often gets a higher price, sells the car faster because they have more "traffic", takes all calls, has professional salesmen, guarantees a price, takes trade-ins from buyers and offers warranties. USA TODAY, July 21, 1983 at 4B.
[2] The court referred to L. 1919, c. 168 at 357 which is a prior Motor Vehicle Title Act, § 5 of which required that in all subsequent sales of a motor vehicles after the initial purchase, the original bill of sale shall be assigned by the seller to the purchaser by an assignment witnessed by two persons and acknowledged before a notary public and the assignments * * * kept and attached to the original bill of sale. § 6 made a violation of the statute a misdemeanor.