Roosevelt Jones appeals from a judgment granting the petition of Chilla Mitchell to have a motor vehicle in Jones's possession seized and returned to her.
In circuit court, the parties stipulated to the following facts: In October 1999, Mitchell decided to sell her 1995 Cadillac Concours automobile. She talked to Tommy Thrash, the proprietor of an automobile dealership called "Repo City," and Thrash assured her that he could get her $16,500 for the vehicle. Mitchell agreed to leave her car for sale at Thrash's lot, and Thrash agreed to pay her $16,500 upon a sale of the vehicle. Mitchell retained the certificate of title to the vehicle.
On October 26, Jones bought the car from Repo City for $18,655. Jones received a bill of sale and an application for title. Thrash did not pay Mitchell. Mitchell returned to the address where she had left her vehicle, but the car lot was gone. She was unable to find Thrash. Mitchell learned that Jones had the car, and she filed a petition for a writ of seizure, seeking the return of the vehicle. The trial court granted the writ and ordered Jones to surrender the car to Mitchell. Jones appeals; we reverse.
Jones bases his claim of ownership on § 7-2-403, Ala. Code 1975, which provides:
 "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights *Page 70 
 only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:
". . . .
 "(d) The delivery was procured through fraud punishable as larcenous under the criminal law.
 "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
 "(3) `Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."
Jones maintains that subsections (2) and (3) of § 7-2-403 are determinative of this case because, he says, Mitchell entrusted her vehicle to Thrash, and Thrash, a dealer in used cars, transferred all of Mitchell's rights in the vehicle to Jones when he purchased the vehicle. Jones contends that he is a "buyer in ordinary course of business." That term is defined in § 7-1-201(9), Ala. Code 1975:
 "`Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . ."
"`Good faith' means honesty in fact in the conduct or transaction concerned." See § 7-1-201(19), Ala. Code 1975. "`Purchaser' means a person who takes by purchase." See § 7-1-201(33), Ala. Code 1975. Jones paid $18,655 for the vehicle. He borrowed $15,000 from Redstone Federal Credit Union, and he paid the rest of the purchase price in cash. He signed a bill of sale and received an application for title. It is undisputed that Thrash was a merchant in the business of selling used cars and that Mitchell authorized Thrash to sell her car.
Mitchell agrees that, pursuant to § 2-7-403(1), Jones acquired "all title which his transferor [Thrash] had or had power to transfer." She argues, however, that Thrash had no title, or power to transfer title to Jones, because of the provisions of the Alabama Uniform Certificate of Title and Antitheft Act ("the title act"). See §§ 32-8-1 et seq., Ala. Code 1975. Specifically, she relies on subsections (a) and (e) of § 32-8-44. Those subsections provide (with exceptions not relevant here) that the transfer of a vehicle is "not effective" unless, "at the time of the delivery of the vehicle," the "owner . . . execute[s] an assignment and warranty of title to the transferee." Mitchell argues that, because she had no power to dispose of the vehicle without a proper transfer of the certificate of title, then Thrash, the merchant to whom the vehicle was entrusted, had no power to dispose of it without a proper transfer of the certificate. Therefore, Mitchell contends, Thrash had no interest that could be transferred to Jones upon a sale.
In a related argument, Mitchell maintains that Jones could not be a "buyer in ordinary course of business" because, she says, Jones could not legally purchase the vehicle without knowledge of Mitchell's interest. She argues that, because she was shown as the owner of the vehicle on the certificate of title, Jones had constructive knowledge of her interest. *Page 71 
We hold that Jones was a "buyer in ordinary course of business" because the undisputed facts show that he purchased a used car in good faith from a merchant dealing in used cars. See Whitworth v. Dodd, 435 So.2d 1305
(Ala.Civ.App. 1983). Accordingly, we hold that, by virtue of § 7-2-403, Jones received title to the vehicle at the time he purchased it from Repo City. See Crum v. SouthTrust Bank of Alabama, N.A., 598 So.2d 867 (Ala. 1992). The Alabama Supreme Court summarized the facts in Crum as follows:
 "Crum . . . entrusted the used automobiles to JT Auto and . . . JT Auto subsequently entrusted the used automobiles to By-Pass Auto, a merchant dealing in goods of the kind. According to Ala. Code 1975, § 7-2-403(2), the sale of the used automobiles by By-Pass Auto transferred `all rights of the entruster,' including legal title, because the purchasers were `buyers in the ordinary course of [By-Pass Auto's used automobile] business.'"
598 So.2d at 872. See generally 2 William D. Hawkland, Uniform CommercialCode Series § 2-403:07 at 883 (1982) ("section 2-403(2) protects a buyer in the ordinary course against a `true owner' in every case in which the owner has entrusted goods to a merchant who deals in goods of the kind").
We reject Mitchell's argument that Jones had constructive knowledge of her interest just because her name appears on the certificate of title to the vehicle. First of all, mere knowledge of the existence of Mitchell's interest would be insufficient to deprive Jones of buyer-in-ordinary-course status.
 "Generally, . . . to disqualify the purchaser, it is necessary to show that the purchaser had `knowledge that the sale to him [was] in violation of the ownership rights . . . of a third party,' — not just knowledge that a third party had some interest."
1 James J. White Robert S. Summers, Uniform Commercial Code § 3-12 at 195 (4th ed. 1995). Moreover, a holding that one is presumed to know the contents of a title certificate for the vehicle he is purchasing would be extremely onerous to the consumer and would substantially impede commercial transactions. "A purpose underlying [UCC Section 2-403] is to protect the merchantability of goods in possession of a dealer." SecurityPacific Nat'l Bank v. Goodman, 24 Cal.App.3d 131, 138, 100 Cal.Rptr. 763,768 (1972).
 "An individual buying a product from an apparent dealer in such goods expects to get good title. This expectation facilitates exchange. One cannot ascertain the seller's title without slowing commerce."
White Summers, supra, § 3-12 at 193 (emphasis added). The title act was not intended to make automobile purchasers wary. It "was . . . enacted to prevent motor vehicle thefts. The very title states that it is an antitheft act. The overall plan of the Act shows exclusive attention to maintaining records of the identity and ownership of vehicles."Treadwell Ford, Inc. v. Campbell, 485 So.2d 312, 318 (Ala. 1986).
The majority of jurisdictions that have considered the issue whether a title act such as Alabama's overrides the "entrustment" provision of UCC § 2-403 have concluded that § 2-403 prevails. See, e.g., AtwoodChevrolet-Olds, Inc. v. Aberdeen Municipal School District, 431 So.2d 926
(Miss. 1983); Martin v. Nager, 192 N.J. Super. 189, 469 A.2d 519 (1983);Cherry Creek Dodge, Inc. v. Carter, 733 P.2d 1024 (Wyo. 1987). The Alabama Supreme Court has spoken on this issue. In Crum v. SouthtrustBank of Alabama, the court held that one who had entrusted used *Page 72 
automobiles to a merchant "failed in his attempt to retain title to the used automobiles by holding the certificates of title." 598 So.2d at 872. We agree with the Supreme Court of Mississippi, which, in discussing the interplay between UCC § 2-403(2) and Mississippi's certificate-of-title statute, stated:
 "In our considered opinion, the pertinent Mississippi title statute was never intended by the Legislature to harm an innocent bona fide purchaser. And, the purpose of that statute can still be achieved even though the `entrustment' statute is given prevalence. In this limited respect, the Commercial Code provision must prevail. Thus, it was not necessary for the purchaser to receive, at the time of delivery of the vehicle, the certificate of origin before title could pass to him. The sale was complete upon delivery."
Atwood Chevrolet-Olds, Inc. v. Aberdeen Municipal School District, 431 So.2d at 928.
In the present case, Mitchell and Jones are both innocent victims of Thrash's dishonesty. As between two such innocent parties, the policy underlying the UCC requires a result in favor of Jones.
 "In most cases the equities between the entrustor-owner and the buyer in the ordinary course are equal, and the balance is tipped in favor of the latter because that frees the marketplace and promotes commerce. This goal, called `security of transactions' is an ideal of the commercial law. The protection of property rights, where the equities between the buyer in the ordinary course and the entrusting owner are equal, is not an ideal of the commercial law. In a broad sense, section 2-403(2) exemplifies one effort to `modernize the law governing commercial transactions' in keeping with the underlying philosophy of the UCC. Accordingly, when a housewife takes her vacuum cleaner for repairs to a merchant who also is in the business of selling vacuum cleaners new and old, the sale by him to a buyer in the ordinary course of business passes a good title to the latter. In this case, the equities of the housewife and the buyer may be said to be equal. The housewife may not have been prudent in entrusting her goods to the dishonest dealer, but, by the same token, the buyer may not have been prudent in buying from him. On the assumption that both the entrustor and buyer have been equally victimized by the dishonesty of the merchant-dealer, section 2-403(2) resolves the issue so as to free the marketplace, rather than protect the original owner's property rights. The rule, however, is an absolute one and does not depend in its operation on any balancing of equities or notions of comparative negligence."
Hawkland, § 2-403:07 at 882-83.
The judgment of the circuit court is reversed and the cause is remanded.
REVERSED AND REMANDED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
Murdock, J., concurs in the result.