Argued and submitted April 3, reversed May 15, 1984

# MATTESON,
*Petitioner on review,*

*v.*

# HARPER,
*Respondent on review.*

(A8202-00761; CA A27119; SC S30332)

682 P2d 766

Leslie M. Roberts, Portland, argued the cause for petitioner on review. With her on the petition and brief were Rex Armstrong and Kell, Alterman & Runstein, Portland.

J. P. Graff, Portland, argued the cause for respondent on review. With him on the response to the petition for review and briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

JONES, J.

## JONES, J.

Plaintiff sued defendant for conversion of collateral in which plaintiff had a perfected security interest.[1] The trial court granted summary judgment for plaintiff in the amount of $17,000, representing the fair market value of the equipment on the date of the conversion. The Court of Appeals reversed, holding that the entrustment provision of Article 2 of the Uniform Commercial Code, ORS 72.4030(3),[2] operates to cut off a perfected security interest under Article 9 of the Uniform Commercial Code, ORS 79.1010 to 79.5070. We allowed review to consider whether ORS 72.4030(3) cuts off a security interest. We hold that it does not and reverse the Court of Appeals.

Matteson, plaintiff, owned a bulldozer, which he purchased as an investment. He sold the bulldozer to the Thorson group[3] and retained and perfected a security interest by filing a financing statement on October 6, 1980. The security agreement prohibited sale of the bulldozer without Matteson's written consent.

The Thorson group defaulted on payments and delivered, for sale, the bulldozer to Walker, an auctioneer who dealt in earth-moving equipment. In March, 1981, upon discovering that the Thorson group had made the delivery, Matteson wrote Walker:

"* * * Mr. Bob Thorson * * * has indicated that the John Deer [sic] 4500 he is purchasing from me is to be at an auction in Seattle on March 26, 1981.

"A minimum sales price must be $22,400.00, plus auctioneer's fee, any transportation costs, storage and handling fees, etc., or I can not consent to the sale. * * *"

Walker did not respond to the letter.

---

[1] In his complaint, plaintiff prayed for possession of the bulldozer and such sum as would compensate him for the decrease in the fair market value of the bulldozer as of the date of the conversion. Alternatively, plaintiff prayed for a sum equal to the fair market value of the equipment at the time of the conversion.

[2] When the Uniform Commercial Code was adopted by the Oregon Legislature, the legislature tracked the numbering sequence set up in the UCC. Hence, UCC 2.403(3) became ORS 72.4030(3).

[3] The Thorson group consisted of a group of family members and a corporation.

On April 18, 1981, defendant, Harper, purchased the bulldozer from Walker in Tigard, Oregon,[4] for $20,500. Walker kept the proceeds of the sale and thereafter went bankrupt. Matteson demanded that Harper return the bulldozer to him. Harper refused and Matteson brought this action for conversion of the property.

ORS 79.3060(2) provides:

> "Except where ORS 79.1010 to 79.5070 otherwise provide, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

This section states as a general rule that after collateral is sold, a security interest continues in the collateral. This general rule is subject to two exceptions: (1) where ORS 79.1010 to 79.5070 (chapter 79) otherwise provide; and (2) when the secured party authorizes the disposition.

■   ORS 79.3070 is entitled "Protection of buyers of goods" and will, in certain situations, operate to cut off a security interest. The provision reads in pertinent part:

> "(1)   A buyer in ordinary course of business as defined in ORS 71.2010(9), other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

This section permits a buyer in the ordinary course of business to take "free of a security interest created by his seller." The security interest in this case was created not by the Thorson group, the seller of the bulldozer, nor by Walker acting on its behalf, but by plaintiff, the secured party. Defendant, Harper, does not take free of Matteson's security interest under this section; nor does Harper take free of the security interest by

---

[4] Matteson was informed by the Thorson group that the bulldozer was to be sold at auction in Seattle. The bulldozer was actually sold in Tigard, Oregon. We do not know whether the bulldozer was ever transported to Seattle. Walker's principal place of business was in Beaverton, Oregon, and in the security agreement the Thorson group agreed to keep the bulldozer in Portland, Oregon, at all times.

reason of the remaining sections of ORS 79.3070 dealing with consumer goods[5] and future advances.[6]

These are the only provisions of ORS chapter 79 under which a buyer of goods can claim to take free of a perfected security interest where a sale was without consent of the secured party. Harper's situation does not fall within any of these provisions, so we turn to the remaining exception.

Harper contends that Matteson's letter to Walker "authorized" the sale of the bulldozer within the definition of ORS 79.3060(2) and, therefore, Matteson's security interest did not continue. In *Baker Prod. Credit v. Long Cr. Meat,* 266 Or 643, 654, 513 P2d 1129 (1973), we examined the effect of a conditional authorization on a perfected security interest:

> "* * * There is nothing in the Code, however, to prevent a secured party from attaching conditions or limitations to its consent to sales of collateral by a debtor. If such conditions are imposed, then a sale by the debtor in violation of those conditions is an unauthorized sale and the security interest, under ORS 79.3060(2), continues in the collateral."

Here, Matteson expressly conditioned the sale of the bulldozer requiring a sales price of at least $22,400 plus fees and costs. The sale of the bulldozer to Harper for $20,500 violated the condition imposed by Matteson and does not constitute an authorized sale under ORS 79.3060(2).

Harper argues and the Court of Appeals held that ORS 72.4030(3) provides Harper an escape from Matteson's security interest. ORS 72.4030(3) provides:

> "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

ORS 72.4030(4) defines "entrustment" to include

> "* * * any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery of acquiescence and regardless of

---

[5] Under ORS 79.3070(2), a buyer of consumer goods takes free of a security interest if he buys before the secured party has filed a financing statement. Whether or not the bulldozer is a "consumer good," defendant purchased the bulldozer on April 18, 1981, more than six months after plaintiff filed his financing statement.

[6] This case did not involve securing future advances.

whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

Harper contends Matteson entrusted the bulldozer to Walker by acquiescing in Walker's possession of the bulldozer. Harper argues that Matteson, after learning Walker had come into possession of the collateral, sent the letter authorizing the sale for a minimum net price and by this act, entrusted the collateral to Walker.

■■■ The entire issue of entrustment is irrelevant. ORS 72.4020(3) provides that nothing within chapter 72 (UCC Art 2) will impair the rights of a secured party. ORS 72.4020(3)(a) states:

"Nothing in ORS 72.1010 to 72.7250 shall be deemed to impair the rights of creditors of the seller:[7]

"(a)  Under the provisions of ORS 79.1010 to 79.5070 on secured transactions; * * *"

This provision and ORS 79.3060(2), providing for the continuance of the security interest except where chapter 79 otherwise provides, indicate that chapter 79, not chapter 72, determines the rights of the parties in the case of an unauthorized sale of goods.

■ Defendant, Harper, contends that as a policy matter the secured party is in a better position to protect his interest in the collateral than is the buyer. Defendant suggests Matteson could have affixed a notice on the bulldozer at the place of sale, informing would-be buyers of Matteson's security interest. The purpose behind filing a financing statement to perfect a security interest is to inform potential buyers of the existing interest. White and Summers, in their treatise, state:

"* * * The draftsmen * * * adopted the concept of notice filing, an idea first introduced by the Uniform Trust Receipts Act. Something should be on the public file simply to alert credit-searchers that a certain security agreement may exist.

---

[7]ORS 71.2010(12) defines "creditor" to include a secured creditor. Walker, as auctioneer, acted on behalf of the sellers, the Thorson group. Generally, an auctioneer is the agent of the person whose property he undertakes to sell. *See, Shopen v. Bone,* 328 F2d 655 (8th Cir 1964); *United States v. LaGrange Stockyard, Inc.,* 270 F Supp 492 (DC Ga 1967); *State v. Tysdal,* 303 Minn 233, 228 NW2d 230 (1975). Matteson held the secured interest in the bulldozer and was not the seller within the meaning of ORS 72.4020(3).

* * *" White & Summers, Uniform Commercial Code 833, ch 23, § 23-5 (1972).

Requiring the secured party to follow the collateral to every sale and post a notice to unwary buyers would undermine the simplicity, uniformity and reliability of the filing system.

The purpose of the Uniform Commercial Code generally and the secured transaction provisions specifically is

"* * * to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." Official Commentary, Uniform Commercial Code § 9-101.

This purpose is best served by providing a comprehensive system by which parties may perfect a security interest and on which they may rely.

The Court of Appeals is reversed and the trial court is affirmed.