For the foregoing consideration, plaintiff's summary judgment motion is denied.

Defendants' attorney is requested to submit an appropriate order in accordance with the rules.

JOHN E. KUSLER, PLAINTIFF, v. FRANK CIPRIOTTI AND TIMOTHY LENZACH, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.

v.

DARLING YACHT SALES, INC., THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Law Division Cape May County

Decided October 29, 1987.

*Dean R. Marcolongo,* for plaintiff (*Michael R. Mazzoni,* attorney).

*Frank G. Olivo,* for defendant Lenzach (*Donio, Olivo & Howell,* attorneys).

CALLINAN, J.S.C.

This matter came on for trial on October 5, 1987. Defendant Cipriotti and third-party defendant Darling Yacht Sales have defaulted. The facts in this case have been stipulated. On or around May 6, 1982, plaintiff Kusler was the title owner to a 1976—26-foot Pacemaker, bearing the name Wahoo, and bearing hull no. 26436137M76. On that date plaintiff sold the vessel for $15,000 to defendant Frank Cipriotti, taking back an $8,000 mortgage and recording a *U.C.C.*-1 financing statement in the Office of the Clerk of Cape May County, thus perfecting the security interest that he had in that vessel. *N.J.S.A.* 12A:9-401.

Sometime thereafter, and prior to March 21, 1984, defendant Cipriotti gave possession of the boat to Darling Yacht Sales for the purposes of sale.

On March 21, 1984, defendant Lenzach purchased the boat from Cipriotti, through Darling, for $8,600 and financed the sale through Anchor Savings and Loan. Defendant Lenzach began making, and continues to make, timely payments to Anchor Savings and Loan on the amount owed on the purchase price.

Plaintiff sues to recover under his security interest. Defendant asserts that he is a buyer in the ordinary course of business

who has taken title free of plaintiff's perfected security interest.

Defendant Lenzach relies on *N.J.S.A.* 12A:1–201(9) to establish his status as a buyer in the ordinary course of business, which the section defines as:

> ... a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind....

Defendant Lenzach requests that the court apply that definition in conjunction with *N.J.S.A.* 12A:9–307(1), which provides: "A buyer in ordinary course of business (subsection (9) of *N.J.S.A.* 12A:1–201) ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Thus, Lenzach claims that he should prevail as against the lien of Kusler.

Plaintiff argues that defendant Lenzach's seller was not Darling but Cipriotti. Cipriotti is not in the business of selling boats and although he used Darling as a middleman, Darling never had title to the boat. Further, the security interest was not "created" by Darling (the merchant), but by Cipriotti (the private-party seller). For all of the above reasons, Kusler maintains that Lenzach cannot be a buyer in the ordinary course of business.

The cases of *Cunningham v. Camelot Motors,* 138 *N.J.Super.* 489 (Ch.Div.1975) and *Martin v. Nager,* 192 *N.J.Super.* 189 (Ch.Div.1983) relied upon by defendant Lenzach, involve motor vehicles which in some respects are treated *sui generis* due to many statutes specifically intended to govern transfers of their ownership. The *Cunningham* case is clearly distinguishable. It involves the purchase of a motor vehicle from a dealer's inventory, without knowledge of a security interest created under a floor-plan financing agreement with defendant Hudson United Bank. The security agreement between Hudson and Camelot specifically authorized Camelot to sell motor vehicles

out of its inventory. The purchaser received his claim to title from the dealer.

In the *Martin* case the facts, in some respects, were more analogous to the situation confronting this court. In that case, Nager had entrusted his 1975 BMW 530 automobile to automobile dealer Bellbrook under a consignment agreement. Under this arrangement, Bellbrook would sell the automobile and deliver to Nager an agreed upon price. Bellbrook would absorb all the expenses of the sale and keep that amount of money which exceeded the agreed upon consideration to Nager.

When Nager went to Bellbrook to retrieve his automobile, believing it to be unsold, he was shocked to learn that his automobile had been sold absent notification to him and without the delivery of any funds to Nager. When Nager attempted to repossess the automobile from Martin the buyer, Martin claimed that he was a buyer in the ordinary course of business and should prevail under *N.J.S.A.* 12A:2–403(2) and (3), which provide:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

In an exhaustive and carefully reasoned opinion, Judge Deighan held that the purchaser of the motor vehicle from Bellbrook should prevail, as between two innocent parties. The court held that where a seller entrusts a motor vehicle to a dealer who sells it without delivery of the certificate of ownership, as required by the motor vehicle title act, a bona fide purchaser prevails as against the seller, citing numerous authorities for that proposition.

This court would distinguish *Martin* from the instant case, in that Nager, by entrusting possession of his BMW to Bellbrook, gave Bellbrook the power to transfer all the rights of the

entruster to a buyer in the ordinary course of business. Bell-brook violated the trust of Nager and under those circumstances, the law favors the purchaser for value. The instant case is not an unauthorized sale or breach of trust situation. Cipriotti (the entruster) is not disclaiming the sale or complaining about it. He merely pocketed the money and absconded.

This transaction is governed by *N.J.S.A.* 12:7A–10 which states:

> Whenever marine equipment is sold in this State, the seller shall execute and deliver to the purchaser an assignment of the certificate of ownership. If a security interest exists at the time of the sale or if, in connection with the sale, a security interest is taken or retained by the seller to secure all or part of the purchase price of the marine equipment, or is taken by a person who by making an advance or incurring an obligation gives value to enable the purchaser to acquire rights in the marine equipment, the name and business or the residence address of the secured party or his assignee shall be noted on the certificate of ownership. Nothing in this section shall apply to a security interest in marine equipment which constitutes inventory held for sale, but the interest shall be subject to chapter 9 of Title 12A of the New Jersey Statutes. Nothing in this section shall apply to seized marine equipment sold by the director, the State Marine Police Force or any law enforcement agency.

Any reading of this statute, under the facts of this case, preserves the plaintiff's perfected security interest. Even if the vessel were being sold from Darling's inventory, the provisions of *N.J.S.A.* 12A:9–303, –306 and –501 would control pursuant to the provisions of *N.J.S.A.* 12:7A–10. The vessel, however, was not part of Darling's inventory and this fact was known to Lenzach. The evidence clearly reflects that the offer to purchase was extended to Cipriotti and Darling is plainly denominated as "Broker."

Cipriotti did not have the power to deliver the title of the vessel free and clear of all encumbrances. The power of Darling could rise no higher than that of Cipriotti and that was to deliver the title to the vessel subject to a perfected security interest held by plaintiff. Plaintiff could do nothing further to perfect his security interest. A simple search would have disclosed plaintiff's lien. Since defendant Lenzach was obtaining title directly from Cipriotti, that burden would not be too

much to place upon him. To rule otherwise would place most security interests at risk. To cut off a lender's perfected security interest in collateral, all a buyer would have to do is to sell the chattel through a middleman. This court is mindful of the unfortunate position that defendant Lenzach is placed in by this decision. It would appear to this court, however, to be sound policy to place a burden upon prospective purchasers of vessels to exercise prudence and caution when not dealing directly with a dealer-seller rather than to dilute the effectiveness of valid security interests. The question boils down to whom to protect against the unscrupulous seller. This court would opt to protect the lender who follows sound commercial practices relying upon the law to protect its interest, rather than the unwary buyer.

Judgment is hereby entered in favor of plaintiff and against defendant, directing the return of the vessel by defendant Lenzach to plaintiff [1], together with interest and costs of suit. Judgment for defendant Lenzach against defendant Cipriotti on the cross-claim and against third-party defendant Darling Yacht Sales, is also hereby entered together with interest and costs of suit.

---

[1]For further proceedings consistent with this opinion and applicable statutes.