Argued and submitted April 20, reversed and remanded June 28, 1995, petition for review allowed November 21, 1995 (322 Or 360)

Howard G. SCHULTZ
and Ann C. Schultz,
*Respondents,*

*v.*

BANK OF THE WEST, C.B.C.,
*Appellant,*

*and*

Robert W. MUIR
and June E. Muir,
*Respondents,*

*and*

John H. GATELEY
and David E. Gateley,
dba Gateleys' Fairway Motors,
*Defendants.*

(93CV0201; CA A85556)

897 P2d 1204

Frank C. Rote, III argued the cause for appellant. With him on the briefs was Brown, Hughes, Bird, Lane & Rote.

Thomas J. Peterson argued the cause for respondents Robert W. Muir and June E. Muir. On the brief were James R. Dole and Schultz, Salisbury, Cauble, Versteeg & Dole.

Stephen Mountainspring argued the cause for respondents Howard G. Schultz and Ann C. Schultz. With him on the briefs was Dole, Coalwell, Clark & Wells, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant Bank of the West, C.B.C., (bank) appeals from a summary judgment declaring plaintiffs, Howard and Ann Schultz, the owners of a motor home "free and clear" of bank's prior perfected security interest. Plaintiffs cross-assign error to the trial court's dismissal of their second claim for relief and its allowance of summary judgment against their fourth claim for relief. We reverse and remand.

The facts are undisputed. In October 1987, defendants Robert and June Muir (Muirs) purchased a 1985 Sportscoach motor home, in which they granted their financier a security interest.[1] Bank was assigned the security interest in the Sportscoach, which it perfected by notation on the certificate of title pursuant to ORS 803.097. On March 7, 1992, Muirs entered into an agreement with Gateleys' Fairway Motors (Gateleys) whereby Gateleys agreed to sell the Sportscoach on consignment. On March 21, 1992, Gateleys sold the motor home to plaintiffs for $40,900 in cash and trade-in vehicles. Gateleys failed to remit any of the money to Muirs or bank and, subsequently, filed for bankruptcy.

After learning of bank's security interest in the motor home, plaintiffs brought an action against bank, Muirs, and Gateleys,[2] seeking, *inter alia*, a declaration that they had title to the motor home free and clear of bank's security interest. Plaintiffs alleged a "first claim," pleading a general entitlement to declaratory relief, and then pleaded, as separate "claims," three distinct grounds for such relief: (1) plaintiffs were buyers of consumer goods, ORS 79.3070(2) (second claim); (2) plaintiffs were buyers in the ordinary course, ORS 79.3070(1) (third claim); and (3) the bank had authorized the sale, ORS 79.3060(2) (fourth claim).[3] In addition, plaintiffs asserted claims for, *inter alia*, indemnification from Muirs, accessions, and storage costs in the event the court determined that bank's security interest survived the

---

[1] The record does not indicate to whom Muirs originally granted the security interest.

[2] Plaintiffs voluntarily dismissed their claims against Gateleys after it filed for bankruptcy.

[3] We note that those "claims" should have been styled as separate counts under plaintiffs' claim for declaratory relief. *See* ORCP 16 B ("Within each claim alternative theories of recovery shall be identified as separate counts.").

sale. Bank counterclaimed for judicial foreclosure of its security interest and conversion. Muirs then moved, pursuant to ORCP 21 A(8), to dismiss plaintiffs' second claim. Before the court ruled on that motion, bank moved for summary judgment on its counterclaims and against all plaintiffs' claims, and Muirs moved for summary judgment against plaintiffs' claims. Finally, plaintiffs cross-moved for summary judgment on their first, second, and third claims.

The court granted Muirs' motion to dismiss the second claim and granted bank and Muirs' motions for summary judgment on plaintiffs' fourth claim that bank had authorized the sale of the motor home. However, the court denied bank's and Muirs' motions for summary judgment against the first and third claims and granted plaintiffs' cross-motion for summary judgment on those claims:

> "Plaintiffs are protected by the Oregon UCC (ORS 79.3070(1)) *if* they are a buyer in the ordinary course of business *and* the security interest was created by the seller. Plaintiffs are a 'buyer in the ordinary course of business' because they purchased in good faith and without knowledge of any third party security interest * * * and they purchased from Muirs' agent, Gateley, who was in the ordinary course of his business * * *. The selling principal, Muirs, created the security interest when they gave such interest to the bank's assignor. Therefore, I find that the buyers (plaintiffs) will be protected from the Bank's security interest." (Emphasis in original.)

The court then entered a judgment, pursuant to ORCP 67 B, awarding plaintiffs title to the motor home free and clear of bank's security interest.[4]

Bank appeals and asserts that the trial court erred in determining that plaintiffs' title to the motor home was unencumbered by bank's security interest. Muirs, who did not cross-appeal, purport to assign error to the same ruling. Because the facts are not in dispute, we review for errors of law. ORCP 47 C.

---

[4] The court's judgment did not adjudicate plaintiffs' remaining claims; nor did it dispose of various cross-claims between bank and Muirs. Finally, although the entry of judgment on plaintiffs' first and third claims would seem to dispose of bank's counterclaims against plaintiffs, the judgment did not purport to adjudicate those counterclaims.

■ Before we consider the merits, however, we first address plaintiffs' motion to strike Muirs' "assignment of error," which echoes bank's arguments and urges reversal.[5] Plaintiffs argue that Muirs, who neither appealed nor cross-appealed, may not seek reversal of the judgment via a cross-assignment of error. We agree. *McKinley v. Owyhee Project North Board of Control*, 103 Or App 253, 268, 798 P2d 673, *on recon* 104 Or App 576, 802 P2d 677 (1990), *on recon* 106 Or App 366, 807 P2d 338, *rev den* 311 Or 426 (1991). Consequently, Muirs' assignment of error, which urges reversal, is improper and is stricken.

Bank argues that the trial court erred in two respects when it granted plaintiffs title in the motor home free of its security interest. First, bank asserts that, because it had perfected its security interest pursuant to ORS 803.097(1),[6] its security interest *automatically* had priority over the ownership rights of a subsequent purchaser. In the alternative, bank asserts that plaintiffs were not buyers in the ordinary course of business within the meaning of ORS 79.3070(1) and, thus, took title to the motor home subject to bank's security interest.

■ Bank's first argument fails because it confuses the difference between perfection of a security interest in collateral with priority of competing interests in that collateral. Bank is correct that ORS 803.097 prescribes the exclusive method of perfecting security interests in motor vehicles, and plaintiffs do not dispute that bank properly perfected its security interest in the motor home. However, such perfection does not, by itself, insure priority over the rights of others in the same collateral:

> "[T]he rights and remedies of all persons in vehicles subject to security interests established under ORS 803.097 shall be determined by the provisions of the Uniform Commercial Code." ORS 803.100.

---

[5] Muirs' stake in reversal is obvious: If bank does not have an enforceable security interest in the motor home, its only recourse is against them.

[6] ORS 803.097(1) provides, in part:

"Except as provided in subsection (4) of this section, the exclusive means for perfecting a security interest in a vehicle is by application for notation of the security interest on the title in accordance with this section."

Thus, priority between bank, as the holder of a security interest in a motor vehicle, and plaintiffs, as subsequent purchasers, is defined by reference to the priority provisions of UCC Article 9, ORS 79.3010 *et seq*. In particular, the issue of priority turns on whether plaintiffs were buyers in the ordinary course of business within the meaning of ORS 71.2010(9) and ORS 79.3070(1).

▆▆▆  A security interest generally follows the collateral to which it has attached into the hands of a purchaser. ORS 79.3060(2).[7] An exception to that general principle is the "buyer in the ordinary course of business" doctrine, codified at ORS 79.3070(1) and ORS 71.2010(9). ORS 71.2010(9) defines "buyer in the ordinary course of business," in part, as

"a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

ORS 79.3070(1) provides:

"A buyer in the ordinary course of business as defined in ORS 71.2010(9), other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by the seller even though the security interest is perfected and even though the buyer knows of its existence."

Thus, a person who qualifies as a buyer in the ordinary course of business takes goods free of a security interest created by the seller, even if the security interest is perfected and the buyer knows that it exists.

Those principles are well-settled. The peculiar twist in this case, which appears to present a question of first impression under Oregon law, arises from Muirs' consignment of the motor home to Gateleys. In particular: Muirs, who created bank's security interest, but who were not themselves "in the business of selling" motor homes, consigned

---

[7] ORS 79.3060(2) provides, in part:

"Except where ORS 79.1010 to 79.5070 and 79.8010 otherwise provide, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise[.]"

the vehicle to Gateleys, which did not create the security interest, but which was in the business of selling motor homes.

Plaintiffs argue that, on those facts, they meet the definition of buyer in the ordinary course of business under ORS 71.2010(9), because they purchased the motor home from Gateleys, who, as used car dealers, are in the business of selling goods of that kind.[8] They further argue that they take title free of bank's security interest under ORS 79.3070(1) because Muirs, who created the security interest, were the true sellers.

Plaintiffs' argument, although inventive and initially appealing, does not withstand close scrutiny. It rests, ultimately, on an artificial and insupportable bifurcation of ORS 71.2010(9) and ORS 79.3070(1). In particular, it presumes that the person from whom a buyer "buys" for purposes of ORS 71.2010(9) (in plaintiffs' view, Gateleys) can be different from the "seller" for purposes of ORS 79.3070(1) (in plaintiffs' view, Muirs). That bifurcation ignores the relationship of ORS 71.2010(9) and ORS 79.3070(1) and the policies underlying the buyer in the ordinary course doctrine. *See Kusler v. Cipriotti,* 221 NJ Super 654, 535 A2d 567 (1987).

In *Kusler,* the plaintiff was the title owner of a 26-foot boat. He sold the boat to Cipriotti for $15,000, retaining a perfected security interest for $8,000 in the boat. Cipriotti later "gave possession" of the boat to Darling Yacht Sales for purposes of sale, and Lenzach purchased the boat through Darling. Kusler brought an action to recover on his security interest, and Lenzach asserted that he took the boat free of the security interest as a buyer in the ordinary course of business. The court disagreed and entered a judgment in Kusler's favor:

> "To rule otherwise would place most security interests at risk. To cut off a lender's perfected security interest in collateral, all a buyer would have to do is to sell the chattel through a middleman. This court is mindful of the unfortunate position that defendant Lenzach is placed in by this

---

[8] Plaintiffs also appear to argue that the entrustment provision of ORS 72.4030 makes them buyers in the ordinary course of business. That argument lacks merit because the entrustment statute does not *create* buyers in the ordinary course of business, but *applies* only to buyers in the ordinary course of business.

decision. It would appear to this court, however, to be sound policy to place a burden upon prospective purchasers * * * to exercise prudence and caution when not dealing directly with a dealer-seller rather than to dilute the effectiveness of valid security interests. The question boils down to whom to protect against the unscrupulous seller. This court would opt to protect the lender who follows sound commercial practices relying upon the law to protect its interest, rather than the unwary buyer." *Id.* at 659.

■ *Kusler* accords with our understanding of Article 9, and ORS 79.3070(1) particularly. The buyer in the ordinary course doctrine is an attempt to balance the interests of secured lenders and buyers. ORS 79.2010 generally allows secured lenders to recover against their collateral even in the hands of subsequent purchasers. However, ORS 79.3070(1) recognizes

"that ordinary buyers of inventory items from a seller who is in the business of selling such items of inventory do not expect to have to answer financially to someone who might be financing the seller of such inventory items." Henry J. Bailey III, 3 *Oregon Uniform Commercial Code*, § 9.109, 339 (2d ed 1990).

Thus, ORS 79.3070(1) protects such buyers, and places the burden on financiers of inventory sellers to take added precautions to protect their interests. Such precautions include closely monitoring the collateral, taking steps to perfect security interests in the proceeds from the collateral, or charging a rate of interest commensurate with the debtor's credit worthiness.

Plaintiffs' construction of ORS 79.3070(1) would skew Article 9's balancing of the rights of secured lenders and the interests of buyers of collateral. If plaintiffs were correct, buyers could effectively nullify security interests in goods owned by noninventory sellers merely by purchasing those goods indirectly through an intermediary who was in the business of selling such goods, rather than directly, from the true owner. Under such a rule, any nonmerchant owner of collateral could become an inventory seller, within the scope of ORS 79.3070(1), merely by consigning the collateral for sale by a person engaged in selling goods of that kind. Article 9 does not countenance such a result.

We thus conclude that plaintiffs were not buyers in the ordinary course of business, for purposes of avoiding bank's security interest, under ORS 79.3070(1), because they did not purchase the motor home from "a person in the business of selling goods of that kind," ORS 71.7010(9), *who also* created the security interest. Here, Gateleys met the first of those conjunctive requirements, and Muirs met the second. Neither satisfied both. Consequently, we reverse the trial court's entry of summary judgment on plaintiffs' first and third claims.[9]

■ We next consider plaintiffs' two cross-assignments of error. Plaintiffs first assert that the trial court erred in dismissing their second claim for relief, which alleged that they took title to the motor home free of bank's security interest as buyers of "consumer goods" under ORS 79.3070(1). We agree. Under *Goose Hollow v. City of Portland*, 58 Or App 722, 726-27, 650 P2d 135 (1982), dismissal of a claim for a declaratory judgment is inappropriate where the claim alleges a justiciable controversy. Plaintiffs' second claim alleged "the existence of an actual controversy relating to the legal rights and duties of the parties." *Id.* at 726. Therefore, dismissal of that claim was improper.

■ Plaintiffs next contend that the trial court erred in granting bank's motion for summary judgment against their fourth claim, which alleged that bank had authorized the transfer of the motor home free and clear of the security interest. Plaintiffs argue that bank's actions in negotiating four checks from Gateleys after the sale to plaintiffs represented authorization of the sale of the motor home free of the security interest or a waiver of the security interest under ORS 79.3060(2).[10] We agree with the trial court that, as a matter of law, bank's actions, which occurred *after* the sale, could not have constituted authorization or effected a waiver. Accordingly, the trial court did not err in granting summary judgment against plaintiffs' fourth claim.

Reversed and remanded.

---

[9] Bank also urges us to "direct the trial court to grant [bank's] motion for summary judgment on its claim for judicial foreclosure." However, bank did not assign error to the trial court's disposition of its summary judgment motion. Accordingly, the propriety of the court's action in that regard is not presented for our review.

[10] *See* n 7, above.