Argued and submitted May 3, 1996, decision of the Court of Appeals reversed and judgment of the circuit court affirmed March 27, reconsideration denied August 15, 1997

Howard G. SCHULTZ
and Ann C. Schultz,
*Petitioners on Review,*

*v.*

BANK OF THE WEST, C.B.C.,
*Respondent on Review,*

*and*

Robert W. MUIR
and June E. Muir,
*Respondents on Review,*

*and*

John H. GATELEY
and David E. Gateley,
dba Gateleys' Fairway Motors,
*Defendants.*

(CC 93CV0201; CA A85556; SC S42658)

934 P2d 421

Stephen Mountainspring, of Dole, Coalwell & Clark, P.C., Roseburg, argued the cause and filed the briefs for petitioners on review.

Frank C. Rote, III, of Brown, Hughes, Bird, Lane & Rote, Grants Pass, argued the cause and filed the brief for respondent on review Bank of the West, C.B.C.

Thomas J. Peterson, Eugene, argued the cause for respondents on review Robert W. Muir and June E. Muir.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

GILLETTE, J.

Graber, J., dissented and filed an opinion in which Van Hoomissen, J., joined.

## GILLETTE, J.

The issue in this case is whether a consumer, who purchases a used motor home from a dealer who was selling the motor home on consignment, acquires that vehicle free of a creditor's prior perfected security interest in it. For the reasons that follow, we hold that the consumer does take the motor home free of the security interest.

The facts are undisputed. In 1987, defendants (the Muirs) bought a motor home. In 1988, the Muirs created, and defendant Bank of the West (the Bank) acquired and perfected, a security interest in the motor home. In 1992, the Muirs entered into an agreement with Gateleys' Fairway Motors (Gateleys) by which Gateleys would sell the motor home on consignment. Gateleys was in the business of selling motor homes. Gateleys sold the motor home to plaintiffs, the Schultzes. Plaintiffs did not know that the motor home was being sold on consignment or that a security interest was attached to it. Gateleys failed to remit any of the sale money to the Muirs and, subsequently, filed for bankruptcy.

After learning of the Bank's security interest, plaintiffs brought the present action, seeking a declaration that they owned the motor home free of the security interest. The trial court granted summary judgment in plaintiffs' favor. The Bank appealed, and the Court of Appeals reversed the trial court, holding that the Bank's security interest remained in force. *Schultz v. Bank of the West*, 135 Or App 359, 897 P2d 1204 (1995). We allowed plaintiffs' petition for review and now reverse the decision of the Court of Appeals.

Whether or not a buyer takes goods free of a prior perfected security interest is governed by Article 9 of the Uniform Commercial Code (the UCC), as codified in ORS chapter 79. The specific question for decision here is whether plaintiffs are entitled to the special protection afforded to consumers by UCC § 9-307 (codified as ORS 79.3070(1)). That section provides, in part:

> "A buyer in ordinary course of business as defined in ORS 71.2010(9) * * * takes free of a security interest created by the seller even though the security interest is perfected * * *."

The cross-referenced section, ORS 71.2010(9), defines "buyer in ordinary course." It provides:

> " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

If plaintiffs can show that they come within the terms of ORS 79.3070(1), they own the motor home free of the Bank's security interest. To do so, the parties here agree that plaintiffs must show two things: (1) They were a "buyer in ordinary course" when they bought the motor home from Gateleys, and (2) the seller of the motor home was the one who created the security interest. Plaintiffs argue that they qualify as "buyers in ordinary course," because they bought the motor home from the Muirs' agent, Gateleys, and Gateleys was in the business of selling used motor homes. Plaintiffs also argue that, as "buyers in ordinary course," they take free of the Bank's security interest that was created by the Muirs, whom plaintiffs claim were the seller. The trial court adopted this position in granting summary judgment in plaintiffs' favor.

The Bank argues that both ORS 79.3070(1) and 71.2010(9) require a "seller" and that the seller must be the *same party* under both provisions. The Bank argues that, if Gateleys qualified as the "seller," then, although plaintiffs would be "buyers in the ordinary course," they could not take free of the Bank's security interest, because Gateleys (as the seller, for the purposes of ORS 71.2010(9)) did not create the security interest—the Muirs did—and ORS 79.3070(1) requires that, for it to apply, the "seller" must have created the security interest. Alternatively, the Bank argues that, if the Muirs qualify as the "seller" (for the purposes of ORS 79.3070(1)), then plaintiffs could not qualify as buyers in the ordinary course, because the Muirs were not in the business of selling used motor homes as is required under ORS 71.2010(9).

This case brings to mind the military adage that all battles are fought at the corner of two maps. It requires us to

interpret both ORS 79.3070(1) and 71.2010(9) and to explain how those two statutes work together. Because plaintiffs cannot attempt to invoke the protection of ORS 79.3070(1) unless they *first* can show that they qualify as "buyers in ordinary course," we begin with the text of ORS 71.2010(9).

1. *Were plaintiffs buyers in the ordinary course of business?*

■ ■    As always, in construing an Oregon statute, this court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). In doing so, this court looks first to the text and context of the statute. *Ibid.*

Here, the relevant text from ORS 71.2010(9) states that a buyer in ordinary course *"buys * * * from a person* in the business of selling goods of that kind." (Emphasis added.) Clearly, the plaintiffs bought from Gateleys, which was in the business of selling goods of that kind. But does the text require that the "person in the business of selling goods" *have title to* the specific goods that the buyer buys, *i.e.,* be the "seller" of the goods.[1] This inquiry is important, because Gateleys disposed of the Muirs' motor home on consignment—it did not have title.

■    The text does not require that the "person" from whom the goods are purchased have title. This is clear, first, from the text itself. Use of the word, "person," instead of "seller" in a law as carefully crafted as the UCC is a conscious choice. That choice recognizes that there will be those who hold out goods for sale who do not have title, *e.g.,* consignees such as Gateleys, in circumstances in which the stability of the marketplace would be undermined if good faith purchases from those parties were not valid. This point is made even more clear by the textual exclusion of "pawnbroker"—a special kind of consignee—from the definition. Finally, the text of ORS 71.2010(9) recognizes that a sale to a buyer in ordinary course may be "in violation of the ownership rights * * * of a third party." Any ownership rights in a third party would mean that the "person in the business" did not have

---

[1] ORS 72.1060(1) defines "sale" as "the passing of title from the seller to the buyer for a price."

title to the goods. Thus, the text of ORS 71.2010(9) indicates that "person" does not mean "seller."

If there were any doubt about the foregoing conclusion, the UCC provides other contextual clues to flesh out the concept of a buyer in ordinary course for the purposes of ORS 71.2010(9). ORS 72.4030(3), which is a part of the "sales" chapter of the UCC, provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer *all rights of the entruster* to a buyer in ordinary course of business." (Emphasis added.) And, as already noted, another section in that chapter, ORS 72.1060(1), defines a "sale" as "the passing of title from the seller to the buyer for a price." When those two sections are read together, it becomes clear that the UCC presumes that a buyer can qualify as a buyer in the ordinary course when the buyer purchases goods from a dealer who only possesses, but does not have legal title to, those goods.[2]

■    Moreover, in examining context, we also look to the UCC commentary and to the decisions of other jurisdictions. *See Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987) (so stating).[3] The UCC commentary does not address explicitly the question whether a buyer who buys from a consignment dealer qualifies as a buyer in the ordinary course. However, the commentary apparently presumes that such a buyer can so qualify. Most jurisdictions similarly have presumed that buyers who buy from consignment dealers *can* qualify as buyers in the ordinary course. *See, e.g.*, *Martin v. Nager*, 192 NJ Super 189, 469 A2d 519 (1983); *American Lease Plans, Inc. v. R.C. Jacobs Plumbing, Heating & Air Conditioning, Inc.*, 274 SC 28, 260 SE2d 712 (1979); *Williams v. Western Sur. Co.*, 6 Wash App 300, 492 P2d 596 (1972); *Kranich & Bach v. Miller*, 3 UCC Rep Serv 449 (NY

---

[2] A commentator on the Oregon Uniform Commercial Code concludes that a buyer qualifies as a buyer in the ordinary course of business when he or she buys from a merchant who has been entrusted with goods by the owner of the goods. Henry J. Bailey, 1 *The Oregon Uniform Commercial Code* § 1.23, 40-41 (2d ed 1990).

[3] Reliance on decisions from other jurisdictions and on the commentary to the UCC is based on the fact that the Oregon legislature adopted the UCC with little debate and, at least in part, intended to further the goal of uniform treatment of commercial matters covered by the code. *Security Bank*, 304 Or at 445 n 6.

Sup Ct 1966); *Al's Auto Sales v. Moskowitz*, 203 Okla 611, 224 P2d 588 (1950) (illustrating proposition).[4]

The Court of Appeals concluded that plaintiffs were not buyers in the ordinary course for purposes of ORS 79.3070(1). However, in so concluding, the Court of Appeals defined "buyer in ordinary course" by reference to the terms of ORS 79.3070(1) itself, rather than by reference to the definition in ORS 71.2010(9). That approach was erroneous. ORS 79.3070(1) does not define buyer in ordinary course, nor does it have any effect on whether a buyer buys in ordinary course. To the contrary, ORS 79.3070(1) *requires as a precondition* that there *already have been* a finding that buyers bought in ordinary course *"as defined in ORS 71.2010(9)."*[5] (Emphasis added.)

■     The text and context of ORS 71.2010(9) demonstrate that a buyer of consignment goods who buys from a consignment dealer can be a buyer in ordinary course for the purposes of that statute. There is no dispute here that plaintiffs meet the other requirements for being buyers in ordinary course. Consequently, we conclude that plaintiffs were buyers in ordinary course when they bought the consigned motor home at Gateleys.

2. *Was the security interest created by the seller?*

We now turn to ORS 79.3070(1). It provides that "[a] buyer in ordinary course of business * * * takes free of a security interest *created by the seller* even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis added.) Here, the Muirs created the security interest, but plaintiffs' dealings were with Gateleys. In order to prevail, plaintiffs must show that, in spite of the

---

[4] Even the case on which the Court of Appeals relied to conclude that plaintiffs were not buyers in the ordinary course—for purposes of ORS 79.3070(1)—acknowledged that a buyer of consignment goods *who was unaware of the consignment arrangement* qualifies as a buyer in the ordinary course of business. *See Kusler v. Cipriotti*, 221 NJ Super 654, 535 A2d 567, 568-69 (1987) (so stating) (citing *Martin v. Nager*, 192 NJ Super 189, 469 A2d 519 (1983)).

[5] The Court of Appeals recognized that principle when it rejected plaintiffs' reliance on *another* statute on the ground that that "statute does not *create* buyers in the ordinary course of business, but *applies* only to buyers in the ordinary course of business." 135 Or App at 365 n 8 (emphasis in original). Similar reasoning applies here.

fact that they dealt with Gateleys, the Muirs were "the seller" for the purposes of this provision. In our view, that issue turns on whether the seller is the party whose *title* to the goods was transferred.[6]

On its face, the text is not decisive, because it does not say whether, for the purpose of the provision, the concept of "seller" is limited to the party with legal title to the goods or whether, instead, the seller is simply the party that physically performs the exchange of goods for money with the buyer. Context, however, answers the question. As we have noted elsewhere, ORS 72.1060(1) provides that "[a] 'sale' consists in *the passing of title from the seller* to the buyer for a price." (Emphasis added.) Nothing in ORS 79.3070(1) suggests that this definition, which specifically states that it is the seller who transfers title, is inapplicable. We hold that "seller," as that term is used in ORS 79.3070(1), refers to the *legal owner* of the goods purchased by a buyer in ordinary course. Gateleys, with whom plaintiffs dealt, did not itself transfer title to the goods. Thus, it was not the "seller," for the purposes of ORS 79.3070(1). The *true* seller of the motor home was the party that ultimately parted with title—the Muirs. And, because the Muirs created the security interest, plaintiffs took the motor home free of the Bank's security interest.[7]

---

[6] We are not presented with a somewhat similar situation that has been addressed by both commentary to the UCC and by case law in other jurisdictions, *viz.*, that in which the owner of the goods who created the security interest has *sold* (not consigned) the goods to another party, who in turn sells the goods to a buyer in the ordinary course. One commentary asserts that a buyer does not take free of the security interest in that situation, because he or she does not buy from a seller who created the security interest. White and Summers, 4 *Uniform Commercial Code* § 33-13, 356-57 (4th ed 1995). Remarkably, however, jurisdictions are split over whether, even in those circumstances (*i.e.*, where the person in the business of selling goods of that kind actually had and transferred title to the goods), the buyer takes free of the security interest. *See, e.g., National Shawmut Bank of Boston v. Jones*, 236 A2d 484, 108 NH 386 (1967); *Martin Bros. Implement Co. v. Diepholz*, 109 Ill App 3d 283, 440 NE2d 320 (1982) (accepting the interpretation of the commentary); *contra, C&J Leasing II Ltd. v. Swanson*, 439 NW2d 210 (Iowa 1989); *Adams v. City Nat. Bank & Trust Co. of Norman*, 565 P2d 26 (Okla 1977) (rejecting the commentators' interpretation). It is important to note that, in the situation described in this footnote, *legal ownership* has been transferred from the original owner, who created the security interest, to a subsequent owner who did not. In that situation, it cannot be gainsaid that the original owner plays no role in the sale of the goods between the subsequent owner and the buyer.

[7] The same result would obtain under the theory that plaintiffs argued below, *viz.*, that Gateleys became the Muirs' *agent* when the Muirs consigned their motor

The dissent objects that, for UCC purposes, the concept of "seller" should be unitary throughout the code provisions that we address here. That may be true, but our opinion does no violence to that concept. We simply hold that, under our construction of the pertinent statutes, a buyer in ordinary course is not required to buy directly from the "seller." Instead, a buyer may buy in ordinary course, so long as the *person* who holds out the goods for sale is one who is in the business of selling goods of that kind. It is *not necessary* that the person holding the goods out for sale have actual *title* to the goods; as in this case, the seller may *entrust* the goods to the person. But, when it comes to the *security interest*, ORS 79.3070(1) requires that the "seller"—*i.e.*, the person who had *title*—be the one who "created" the security interest. Here, that is precisely what the titleholders (the Muirs) did. Our conclusion thus respects the wording of both ORS 71.2010(9) and 79.3070(1).

We hold that plaintiffs are entitled to the protection of ORS 79.3070(1), because they were buyers in the ordinary course of business and the seller created the security interest. The Court of Appeals erred in reaching a contrary result.

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is affirmed.

**GRABER, J.,** dissenting.

I dissent.

The issue before us is whether a person who bought a used motor home acquired it free of a bank's prior perfected security interest, under ORS 79.3070(1), a part of the Uniform Commercial Code (UCC). If so, the buyer took the motor home free of the bank's perfected security interest. If not, the bank's security interest in the motor home continues.

In answering that question, the majority fails to follow the applicable statutes in three key respects:

(1) The majority fails to use the statutory definition of "sale," ORS 72.1060, to inform the meaning of the related

---

home to Gateleys. As a consequence of that agency relationship, plaintiffs argued, the two parties became one for the purposes of ORS 79.3070(1). For purposes of this decision, we need not define that relationship or its legal effects.

terms "seller" and "selling" in the statute that we are called on to interpret.

(2) The majority fails to give effect to the structure of Article 9 of the UCC, under which ORS 79.3070(1) is an exception to the general rule that a security interest continues in collateral despite a sale or other disposition of that collateral.

(3) The majority fails to parallel the holdings of other jurisdictions despite the statutory directive, ORS 71.1020-(2)(c), to make the law uniform among jurisdictions.

As always, in construing an Oregon statute, this court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In doing so, this court looks first to the text and context of the statute. *Ibid.*

ORS 79.3070(1) provides:

"A buyer in ordinary course of business as defined in ORS 71.2010(9), other than a person buying farm products from a person engaged in farming operations[,] takes free of *a security interest created by the seller* even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis added.)

ORS 71.2010(9), which the foregoing section incorporates by reference, provides, in part:

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods *buys* in ordinary course *from a person in the business of selling goods of that kind* but does not include a pawnbroker." (Emphasis added.)

Under the UCC as enacted in Oregon, ORS 79.3070-(1) is an exception to the general rule, set forth elsewhere in Article 9, that a security interest continues in collateral despite a sale or other disposition of that collateral.

"ORS 79.3060(2) provides:

" 'Except where ORS 79.1010 to 79.5070 otherwise provide, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless

the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.'

"This section states as a general rule that after collateral is sold, a security interest continues in the collateral. This general rule is subject to two exceptions: (1) where ORS 79.1010 to 79.5070 (chapter 79) otherwise provide; and (2) when the secured party authorizes the disposition.

"ORS 79.3070 * * * will, in certain situations, operate to cut off a security interest." *Matteson v. Harper*, 297 Or 113, 116, 682 P2d 766 (1984).

*See also* ORS 79.2010 (except as the UCC otherwise provides, "a security agreement is effective according to its terms * * * against purchasers of the collateral").

The wording of the exception found in ORS 79.3070(1)—which is section 9-307(1) of the UCC—contains

"six conditions for one to take free of a prior perfected security interest:

"(1) The person must be a buyer in the ordinary course,

"(2) who does not buy in bulk and does not take its interest as security for or in total or partial satisfaction of a pre-existing debt (that is, the buyer must give some form of 'new' value),

"(3) who buys from one in the business of selling goods of that kind (that is, cars from a car dealer, i.e. inventory),

"(4) who buys in good faith and without knowledge that the purchase is in violation of others' ownership rights or security interests, and

"(5). does not buy farm products from a person engaged in farming operations, and

"(6) the competing security interest must be one 'created by his seller'.

"Several of these conditions come from subsection (9) of 1-201 which defines the words 'buyer in ordinary course of business.'"

White and Summers, 4 *Uniform Commercial Code* § 33-13, 352 (4th ed 1995) (footnote omitted). This case calls into play the third and sixth conditions: To take advantage of the special protection of UCC § 9-307(1), a person must buy from one who is in the business of selling goods of the kind involved, *and* the competing security interest must be one created by the person's seller.

For present purposes, the key concept in the text of UCC § 9-307(1) (codified as ORS 79.3070(1)) is "sale." That term is statutorily defined. ORS 79.1050(3)(L) provides that the word "sale" has the definition provided in ORS 72.1060, for the purpose of Article 9 of the UCC in Oregon, unless the context otherwise requires. ORS 72.1060 provides that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." The definition of "sale" carries with it the linguistically and logically related concepts of "seller" and "selling." ORS 79.3070(1) uses the noun "seller" in a sentence that incorporates by reference the definition in ORS 71.2010(9). In turn, ORS 71.2010(9) uses the phrase "person in the business of selling" and the noun "sale." The context of ORS 79.3070(1) does not require that "sale" and its variants have a different meaning than the statutory one. Accordingly, the definition of "sale" in ORS 72.1060 is (pursuant to ORS 79.1050(3)(L)) to inform the meaning of ORS 79.3070(1) and the definitional section incorporated by reference therein.

Under the statutory definition, the Muirs were the "seller" of the motor home and also were the "person * * * selling" the motor home, ORS 71.2010(9), because they passed title to the motor home, for a price, to a buyer. Indeed, the Muirs alone had title to the motor home, and they alone were capable of passing that title to someone else. As this court held in *Belmont International v. American International*, 313 Or 112, 117, 831 P2d 15 (1992), in a consignment, "under normal circumstances, 'the absolute ownership of the property is in the consignor.'" (Citation omitted.) *See also* Henry J. Bailey III, 3 *The Oregon Uniform Commercial Code* § 9.121, 367-68 (2d ed 1990) (consigned goods are not technically the property of the consignee); *Central Wash. Bank v. Mendelson-Zeller*, 113 Wash 2d 346, 779 P2d 697, 702 (1989) (consignee who agrees to sell goods for another does not buy

or take title to the goods and thus is not a buyer in ordinary course under UCC § 9-307(1); because security interest was created by prior seller to its immediate consignor, consignee could not qualify under that statute even if viewed as a buyer from consignor).

Although the Muirs were the seller, they were not "in the business of selling goods of that kind," ORS 71.2010(9), that is, motor vehicles.[1] That being so, plaintiffs did not buy from a category of seller that would enable them to take advantage of the special "buyer in ordinary course" protection afforded by ORS 79.3070(1), notwithstanding their good faith and lack of knowledge of a violation of the bank's security interest.

The foregoing interpretation is consistent with the context provided by Article 9, as well as with the text of ORS 79.3070(1) itself. ORS 79.3020 relates to the filing of financing statements, which ordinarily must be done in order to perfect security interests. ORS 79.3020(3)(b) provides, in part:

"The filing of a financing statement otherwise required by ORS 79.1010 to 79.5070 and 79.8010 is not necessary or effective to perfect a security interest in property subject to:

"* * * * *

"(b)   * * * the Oregon Vehicle Code; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of ORS 79.4010 to 79.4080 apply to a security interest in that collateral created by the person as debtor."

That section of Article 9 of the UCC segregates for special treatment security interests in motor vehicles when (1) the seller of those vehicles "is in the business of selling" motor vehicles *and* (2) that same seller as debtor creates the security interest in the vehicles. *See also* ORS 803.097(1) and

---

[1] *See also* ORS 803.097(4) ("if the debtor who granted the security interest" in a vehicle "is in the business of selling vehicles and the vehicle constitutes inventory held for sale," a security interest in the vehicle "is subject to the perfection provisions under ORS chapter 79" instead of the special perfection provisions of ORS 803.097(1)).

(4) (except when "the debtor who granted the security interest is in the business of selling vehicles and the vehicle constitutes inventory held for sale," "the exclusive means for perfecting a security interest in a vehicle is by application for notation of the security interest on the title in accordance with this section").

Those provisions suggest that, at least with respect to motor vehicles, the legislature has carved out a narrow class of sellers as to whom special Article 9 rules apply. The Muirs do not fit the definition, because they are not in the business of selling vehicles. Gateleys does not fit the definition, because it was not the debtor that created the security interest.

In examining the context of a provision of the Oregon UCC, the court also looks to the UCC commentary and to the decisions of other jurisdictions concerning the parallel UCC provision. *Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987). The reason why the court does so is that the legislature has specified, ORS 71.1020(2)(c), that an underlying purpose of the UCC in Oregon is to make the law among the various jurisdictions uniform. *U.S. National Bank v. Boge*, 311 Or 550, 560-61, 814 P2d 1082 (1991). The commentary and the case law from other jurisdictions support the textual interpretation of UCC § 9-307(1) tentatively arrived at above.

The commentary and most of the decided cases involve successive passing of title, rather than consignment sales. In that situation, the owner of the goods who created the security interest has sold the goods to another party, who in turn sells the goods to a buyer in ordinary course. One commentator asserts that a buyer does *not* take free of the security interest in that situation, because he or she does not buy from a seller who created the security interest. Hawkland, Lord & Lewis, *Uniform Commercial Code Series* § 9-307:02 (Art 9), at 105-06 (1991).

White and Summers explain that UCC § 9-307(1) "is designed principally for * * * the case of one who gives new value to purchase out of the seller's inventory." White and Summers, § 33-13 at 352; *see also* Ronald A. Anderson, 9 *Anderson on the Uniform Commercial Code* (3d ed 1994),

§§ 9-307:9 at 353, 9-307:31 at 367-68 (one who buys in the ordinary course of business "items taken from the seller's inventory" takes free of a security interest in that inventory when the security interest was "created by the seller"); Bailey, § 9.109 at 339 (an ordinary buyer of an inventory item from a seller who is in the business of selling such items of inventory does not expect to answer monetarily to the person financing the seller with respect to such inventory items). In such a situation, the seller whose inventory is involved both passes title to the buyer *and* creates the security interest in that inventory. The person with whom the buyer deals directly is the *same* person who is the debtor with respect to the security interest that the buyer is able to defeat.

Jurisdictions are split over whether, in that circumstance of successive passing of title, the buyer takes free of the security interest. *Compare, e.g., Martin Bros. Implement Co. v. Diepholz*, 109 Ill App 3d 283, 440 NE2d 320, 324 (1982); *National Shawmut Bank of Boston v. Jones*, 108 NH 386, 236 A2d 484, 485-86 (1967) (agreeing with official commentary) *with C&J Leasing II Ltd. v. Swanson*, 439 NW2d 210, 213-14 (Iowa 1989); *Adams v. City Nat. Bank & Trust Co. of Norman*, 565 P2d 26, 30-31 (Okla 1977) (rejecting position of official commentary). However, the *majority* of jurisdictions have held that the buyer does *not* take free of a security interest in the situation involving successive sales. *See Uniform Commercial Code Case Digest*, ¶¶ 9307.10 and 9307.15 (collecting cases). In *Matteson*, 297 Or at 116-19, this court embraced that majority position.

Even though the commentary and most of the reported cases treat the situation of successive passing of title, rather than consignment sales, the commentary and the cases serve as useful context in two ways. First, the two major themes of the commentary and cases are of some assistance in resolving the present issue: (1) that UCC § 9-307(1) is an exception to the general rule of Article 9 that a perfected security interest follows the collateral, and (2) that, in order for a buyer to take advantage of that exception, the buyer's immediate seller must be in the business of selling goods of that kind *and* must be the one creating the security interest in question.

Second, the successive-sale cases and the commentary demonstrate that the majority's view yields an anomalous result. Had the Muirs sold the motor home to Gateleys instead of consigning it, the Muirs would not qualify for the special protection of ORS 79.3070(1), and the bank's security interest in the motor home would continue. There is no reason to be found in the wording of the statute, in the policies underlying UCC § 9-307(1), or in logic why the lienholder should be in a worse position when the Muirs consigned the motor home to Gateleys.

Additionally, some of the cases from other jurisdictions do involve consignments or entrustments and are quite close to the situation presented here. For example, in *Security Pacific National Bank v. Goodman*, 24 Cal App 3d 131, 100 Cal Rptr 763 (1972), the Redingers bought a boat. They borrowed money from a bank to buy the boat, giving the bank a security interest, which the bank then duly perfected. Thereafter, the Redingers "entrusted possession of the boat to Jeffries, who was a merchant dealing in such boats." 100 Cal Rptr at 767. Jeffries knew of the outstanding bank loan. Jeffries sold the boat to Goodman and Hicks. They knew that the boat was used, but they did not know of the bank's security interest. The question before the court was whether, under UCC § 9-307(1), Goodman and Hicks took the boat free of the bank's security interest and, more specifically, whether they were buyers in ordinary course of business. *Id.* at 766. The court answered that question "no":

"If [Goodman and Hicks] are to qualify as buyers 'in ordinary course of business,' they must have purchased 'from a person in the business of selling goods of that kind,' *i.e.*, a dealer. Jeffries was such a person. The statute gives [Goodman and Hicks] the property free of a security interest created by their seller—*i.e.*—created by Jeffries. The bank's interest was created by the Redingers. If we were to construe the transaction as a sale from the Redingers to [Goodman and Hicks], the statute would still be inapplicable for the reason that the Redingers were not in the boat-selling business." *Id.* at 767.

The court held that the bank was entitled to possession of the boat. *Ibid.*

In *Ocean Cty. Nat'l Bank v. Palmer*, 188 NJ Super 509, 457 A2d 1225 (1983), a marina sold a boat to Palmer. The marina retained a security interest that it assigned to Ocean County National Bank, which then perfected its security interest. Later, Palmer returned the boat to the marina with the understanding that the boat would be sold on his behalf and that Ocean County's loan would be satisfied on Palmer's behalf from the proceeds of the sale. 457 A2d at 1226. The marina resold the boat to Hess but failed to pay off Palmer's loan, instead assigned a purported new security interest to First Commercial Corporation. *Id.* at 1226-27. When Palmer discovered what had happened, he stopped making payments on the loan to Ocean County. Ocean County repossessed the boat from Hess, the marina filed for bankruptcy, and Ocean County filed an action to determine the priorities and rights of the parties. *Id.* at 1227.

The court held, among other things, that Hess (who bought the boat from the marina after Palmer entrusted it to the marina for resale) was not entitled to the protection of UCC § 9-307(1), even though Hess was as innocent as the lienholder, Ocean County. *Id.* at 1227-29. The court concluded that section 9-307(1) refers exclusively to inventory "floor plan" financing. *Id.* at 1228, 1229 n 3. The court relied on the wording of the statute and on cases from other jurisdictions and added:

> "[L]enders must have protection for their liens despite subsequent resale of the collateral in order to induce them to finance consumer purchases. Allowing the resale through a dealer to overcome a lien held by a third party, other than one financing a floor plan, would make it too easy to defeat such liens." *Id.* at 1229.

*See also Kusler v. Cipriotti*, 221 NJ Super 654, 535 A2d 567 (1987) (holding that a buyer did not take free of a security interest when the buyer bought from a consignee but the consignor had created the security interest).

A leading treatise has explained the operation of UCC § 9-307(1) in the same way as the foregoing cases, giving the following example and rationale for the statutory rule:

> "A final requirement of 9-307(1) likely to cause a few difficult moments is that the security interest of which the

buyer takes free be 'created by his seller.' In the usual case where the buyer purchases an automobile from a dealer's inventory, the dealer created the security interest in the dealer's lender. But what of the case where Mrs. Jones purchases a new automobile and gives a security interest to Bucks, her lender; then Mrs. Jones trades the automobile in to Puff (without telling him about the security interest), an automobile dealer who in turn sells the automobile to Mr. Sucker. Ultimately, Bucks attempts to recover the automobile from Mr. Sucker. Because the security interest was not created by Mr. Sucker's seller, Puff, Mr. Sucker is not qualified for the coverage under 9-307(1), and his interest will be subordinate to the security interest created by Mrs. Jones. — The language and the intention of the Code seem clear enough. The difficulty is that the policy of 9-307 would seem to cover Mr. Sucker. That is, he is neither more nor less than a garden variety purchaser who pays cash and buys out of the inventory of a dealer. Perhaps the drafters intended that as between two innocent parties the ultimate loss should fall on the party who dealt most closely with the 'bad guy.' After Mr. Sucker buys from Puff, both he and Bucks are innocent parties. Mr. Sucker will have a cause of action against Puff for breach of warranty of title; Puff will have a similar cause of action against Mrs. Jones, and so on up the line until the 'bad guy' is made to pay. If Mrs. Jones cannot pay or is otherwise out of the picture but Puff is solvent, the ultimate loss will land on Puff."

White and Summers, § 33-13 at 356-57 (footnotes omitted). That example is roughly analogous to the situation before us.

There is no doubt that a case of this kind presents a conundrum, neither answer to which is particularly satisfying. Perhaps the reason why neither answer is satisfying is that we must decide which of two innocent parties loses.[2] But I conclude that the text and context make clear the legislature's intent. Under ORS 79.3070(1), the Muirs were the seller of the motor home, but they were not in the business of selling motor homes. Accordingly, plaintiffs are not entitled

---

[2] Arguably, the bank is the more innocent party here. The bank did everything that the law requires and everything that the law allows, in order to create and perfect its security interest. Plaintiffs, at least in theory, could have demanded to see the title to the motor home. Had they done so, they would have learned of the bank's security interest in the motor home, because the bank had perfected its interest as required by ORS 803.097(1) by having that interest noted on the title.

to the protection of ORS 79.3070(1), and the bank's perfected security interest in the motor home continues.

For the foregoing reasons, I respectfully dissent.

Van Hoomissen, J., joins in this dissenting opinion.